Filed 6/10/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| RAYMOND MARTINEZ et al., | ) | |
| | ) | |
| Plaintiffs and Respondents, | ) | |
| | ) | S200944 |
| v. | ) | |
| | ) | Ct.App. 2/1 B226665 |
| BROWNCO CONSTRUCTION | ) | |
| COMPANY, INC., | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. KC050128 |
| _____ | ) | |

Section 998 of the Code of Civil Procedure[1] was enacted to encourage the settlement of lawsuits prior to trial. The statute accomplishes this purpose by providing for augmentation and withholding of the costs recoverable at trial when a party fails to achieve a result better than it could have obtained by accepting an offer of compromise or settlement conforming to statutory requirements. Among other things, section 998 provides that a defendant may be ordered to pay a reasonable sum to cover the plaintiff's postoffer costs of expert witness services when the judgment is not more favorable than the plaintiff's settlement offer. (§ 998, subd. (d).)

The terms of section 998 do not prohibit a party from making more than one settlement offer, but they are silent as to the effect of a party's multiple offers.

_____

[1] All further statutory references are to this code, unless otherwise indicated.

In this action, we consider whether a later offer extinguishes a previous offer for purposes of section 998's cost-shifting provisions. We conclude that where, as here, a plaintiff makes two successive statutory offers, and the defendant fails to obtain a judgment more favorable than either offer, allowing recovery of expert fees incurred from the date of the first offer is consistent with section 998's language and best promotes the statutory purpose to encourage settlements.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Raymond Martinez and his wife, Gloria Martinez, sued defendant Brownco Construction Company, Inc. (Brownco) for damages arising out of an electrical explosion that severely injured Mr. Martinez.

Prior to trial, plaintiffs each served on Brownco two settlement offers pursuant to section 998. In August 2007, Mr. Martinez offered to compromise his negligence claim in the amount of $4.75 million, and Mrs. Martinez offered to compromise her loss of consortium claim for $250,000. Brownco neither accepted nor rejected these offers within the statutory 30-day period. (§ 998, subd. (b)(2).) Just before trial, in February 2010, Mr. Martinez and Mrs. Martinez served reduced compromise offers of $1.5 million and $100,000, respectively. As before, Brownco took no action.

At trial, Mr. Martinez obtained a judgment of $1,646,674, and Mrs. Martinez obtained a $250,000 judgment. Plaintiffs filed a memorandum of costs seeking a total of $561,257.14 in itemized costs. Brownco moved to tax costs, and as pertinent here sought an order disallowing Mrs. Martinez's recovery of $188,536.86 in expert fees incurred after her first settlement offer but before her second offer. The trial court sided with Brownco and entered an order taxing the

2

disputed expert fees.[2]  Relying on *Wilson v. Wal-Mart Stores, Inc.* (1999)
72 Cal.App.4th 382 (*Wilson*), the court stated:  "The most recently rejected offer is
the only pertinent offer.  All prior offers are extinguished by the subsequent offer."

The Court of Appeal reversed, reasoning that allowance of expert fees
incurred from the date of the first rejected offer is consistent with section 998's
language and purpose, and that contract principles do not compel otherwise.

We granted Brownco's petition for review.

### DISCUSSION

The question presented is this:  When a plaintiff serves two unaccepted
offers to compromise pursuant to section 998, and the defendant fails to obtain a
judgment more favorable than either offer, does the plaintiff's last offer extinguish
the first offer for purposes of expert fee recovery under section 998?  Because this
issue involves the application of law to undisputed facts, we review the matter de
novo.  (*Saakyan v. Modern Auto, Inc.* (2002) 103 Cal.App.4th 383, 390.)

**A.  Section 998 and the Principles Governing Its Application**

As a general matter, a party prevailing at trial may not recover the fees of
experts who are not ordered by the court.  (§§ 1032, 1033.5, subd. (b)(1).)  Such
fees are recoverable, however, when a judgment following the nonacceptance of a
pretrial settlement offer triggers operation of section 998.  As relevant here,
section 998 provides:  "(a)  The costs allowed under Sections 1031 and 1032 shall
be withheld or augmented as provided in this section.  [¶] . . . .  [¶] (d)  If an offer
made by a plaintiff is not accepted and the defendant fails to obtain a more
favorable judgment or award in any action or proceeding . . . , the court or

---

[2]    The portion of the trial court's order awarding plaintiffs the expert witness
fees they incurred after their second offers is not in dispute here.

3

arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs."[3]  To qualify for these augmented costs, the plaintiff's offer must be in writing and conform to statutory content requirements.  (§ 998, subd. (b).)  "If the offer is not accepted prior to trial or arbitration or within 30 days after it is made, whichever occurs first, it shall be deemed withdrawn . . . ." (§ 998, subd. (b)(2).)

The policy behind section 998 is "to encourage the settlement of lawsuits prior to trial." (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280 (*T.M. Cobb*); see *Poster v. Southern Cal. Rapid Transit Dist.* (1990) 52 Cal.3d 266, 270 (*Poster*).)  To effectuate this policy, section 998 provides "a strong financial disincentive to a party — whether it be a plaintiff or a defendant — who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer." (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804.)  At the same time, the potential for statutory recovery of expert

---

**3**  With regard to defense settlement offers, section 998, subdivision (c)(1), provides:  "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."  Unlike subdivision (d) of section 998, this provision allows recovery of expert witness fees incurred *before and after* a settlement offer. (*Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 532.)

4

witness fees and other costs provides parties "a financial incentive to make reasonable settlement offers." (*Ibid*.) Section 998 aims to avoid the time delays and economic waste associated with trials and to reduce the number of meritless lawsuits. (*Culbertson v. R.D. Werner Co., Inc.* (1987) 190 Cal.App.3d 704, 711; see *Wilson*, *supra*, 72 Cal.App.4th at p. 390.)

As indicated, section 998 provides that a plaintiff may recover postoffer costs of expert witness services if: (1) the plaintiff makes an offer to compromise that conforms to the statutory time and content requirements; (2) the defendant does not accept the offer; and (3) the defendant does not obtain a more favorable result in the action. Nothing in the wording of section 998 prevents a plaintiff from making more than one compromise offer, but the statute makes no mention as to the effect of a later offer on an earlier offer.

When the language of section 998 does not provide a definitive answer for a particular application of its terms, courts may consult and apply general contract law principles. Because the process of settlement and compromise is a contractual one, such principles may, in appropriate circumstances, govern the offer and acceptance process under section 998. (See *T.M. Cobb*, *supra*, 36 Cal.3d at p. 280.) A general contract law principle may be found controlling if the policy of encouraging settlements is "best promoted" thereby. (*Id*. at p. 281.)

For example, under general contract law, an offer may be revoked any time before acceptance. (Civ. Code, § 1586.) In *T.M. Cobb*, *supra*, 36 Cal.3d 273, we invoked that basic principle in concluding that a section 998 offer is revocable prior to its acceptance or statutory expiration. (*T.M. Cobb*, at pp. 283-384.) As we explained, a party is more likely to make a statutory offer to compromise in the first instance if it knows the offer may be withdrawn and revised should circumstances change or new evidence be developed. (*Id*. at p. 281.) Because "more offers will be made if revocation is permitted," and because "[t]he more

5

offers that are made, the more likely the chance for settlement," we concluded that applying the basic principle of revocability better serves the policy of encouraging settlements than a rule of irrevocability. (*Ibid.*)

Of course, a contract law principle will not be found to govern if its application would conflict with section 998 or defeat its purpose. (*T.M. Cobb*, *supra*, 36 Cal.3d at p. 280; see *Poster*, *supra*, 52 Cal.3d at p. 271.) For instance, under general contract law, a counteroffer that deviates from the terms of an offer ordinarily operates as a rejection of the offer so as to terminate the offer immediately. (See generally 14 Cal.Jur.3d (2008) Contracts, § 76, p. 302.) In finding this principle inapplicable in the section 998 context, *Poster* observed that negotiations involving the making of counteroffers are a normal and routine occurrence during the statutory 30-day period and "ought not to affect the right of the offeree to ultimately accept the statutory offer in a timely fashion." (*Poster*, at p. 271.) Because the general counteroffer rule would tend to stifle negotiations and discourage settlement, *Poster* concluded that, even after extending a counteroffer, an offeree may accept a statutory offer any time before its revocation or expiration. (*Id.* at pp. 271-272.)

Another relevant consideration is whether applying section 998 in a particular manner serves the public policy of compensating the injured party. Courts look favorably upon applications that provide flexibility when parties discover new evidence bearing on the plaintiff's injuries or the defendant's culpability. (E.g., *T.M. Cobb*, 36 Cal.3d at p. 282 [revocability of section 998 offers allows the offeror to "either propose a new offer in light of the newly discovered evidence or proceed to trial and present all the evidence in an attempt to be compensated fairly by the trier of fact's decision"].)

Finally, a court should assess whether the particular application injects uncertainty into the section 998 process. If a proposed rule would encourage

6

gamesmanship or spawn disputes over the operation of section 998, rejection of the rule is appropriate.  (See *Poster*, *supra*, 52 Cal.3d at p. 272; *Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 129.)  In *Poster*, for example, we emphasized the difficulty of discerning between a mere inquiry as to the possibility of different terms (which would leave an offeree free to accept an outstanding section 998 offer) and a true counteroffer (which would operate as a rejection of the statutory offer and prevent its later acceptance).  (*Poster*, at p. 272.)  To promote clarity over the status of a section 998 offer, *Poster* concluded the general counteroffer rule is inapplicable in the section 998 context.  (*Poster*, at p. 272.)  In other instances, courts have adopted bright line rules in order to avoid confusion.  (E.g., *Perez v. Torres* (2012) 206 Cal.App.4th 418, 425-426 [confusion regarding cost determinations avoided by bright line rule invalidating any section 998 offer when it omits a statutorily required provision]; *One Star, Inc. v. STAAR Surgical Co.* (2009) 179 Cal.App.4th 1082, 1094-1095 [legislative purpose better served and gamesmanship avoided by bright line rule that if party withdraws second section 998 offer prior to its statutory expiration, then withdrawing party's right to cost shifting is determined by previously rejected statutory offer]; *Engle v. Copenbarger & Copenbarger, LLP* (2007) 157 Cal.App.4th 165, 169 [adhering to bright line rule that a section 998 offer excludes attorney fees only if it says so expressly].)

## B.  The Last Offer Rule

The parties focus primarily on two Court of Appeal decisions that addressed the effect of a second statutory offer on a first statutory offer:  *Distefano v. Hall* (1968) 263 Cal.App.2d 380 (*Distefano*) and *Wilson*, *supra*, 72 Cal.App.4th 382.

*Distefano*, *supra*, 263 Cal.App.2d 380, involved two defense offers to compromise under former section 997, the predecessor to section 998.**4**  There, the defendants first made a $20,000 statutory offer, which was not accepted.  At trial, the plaintiff obtained an award of $28,500, which was reversed on appeal.  The defendants thereafter made a $10,000 statutory offer, which also was not accepted.  The plaintiff obtained an award of $12,559.96 at the retrial and was allowed costs.  (*Distefano*, at pp. 383-384.)  On appeal, the defendants challenged the cost award and further contended the plaintiff should pay their costs because he refused to accept their first offer of $20,000, which was more favorable to the plaintiff than the result at the retrial.  (*Id*. at p. 384.)

The *Distefano* court affirmed, emphasizing the contractual nature of the statutory settlement and compromise process and the general contract rule that "any new offer communicated prior to a valid acceptance of a previous offer, extinguishes and replaces the prior one."  (*Distefano*, *supra*, 263 Cal.App.2d at p. 385.)  Discerning a legislative intent to give "full effect to the parties' reappraisals of the merits" of their cases, *Distefano* concluded that parties should be encouraged to make and consider multiple settlement offers and that the policy in favor of settlements would be promoted by a rule that a later statutory offer extinguishes a previous statutory offer for purposes of cost shifting.  (*Ibid*.)  Thus,

---

**4**  In *T.M. Cobb*, *supra*, 36 Cal.3d 372, we observed that former section 997 "provided for statutory offers of compromise by defendants only.  Such offers were deemed to be withdrawn if they were not accepted within five days.  This five-day period was later extended to a ten-day period. (Stats. 1969, ch. 277, § 1, p. 626.)  Section 998 was enacted in 1971. (Stats. 1971, ch. 1679, § 3, pp. 3605-3606.)  It expanded former section 997's coverage to include statutory offers of compromise by plaintiffs as well as defendants.  Under section 998, such offers are now deemed withdrawn if not accepted within 30 days.  The theory and purpose of the statute remained the same. [Citations.]" (*T.M. Cobb*, at p. 279, fn. 6.)

8

because the plaintiff ultimately obtained a verdict more favorable than the defendants' last offer, he was not required to pay the defendants' costs. (*Ibid.*)

*T.M. Cobb*, *supra*, 36 Cal.3d 273, did not address the effect of multiple offers under section 998. Significantly, however, the decision approved of *Distefano*'s reasoning that, because section 998 involves the contractual process of settlement and compromise, general contract law principles may properly govern the statutory offer and acceptance process so long as they "neither conflict with the statute nor defeat its purpose." (*T.M. Cobb*, at p. 280.)

In *Wilson*, *supra*, 72 Cal.App.4th 382, a plaintiff made two section 998 offers to compromise. The first offer was for $150,000, and the second was for $249,000. The defendant failed to respond to either offer, and each was statutorily deemed withdrawn. The jury awarded a verdict of $175,000 in the plaintiff's favor. (*Wilson*, at p. 387.) The trial court granted the defendant's motion to tax the expert witness fees upon finding the plaintiff's last offer of $249,000 " 'superseded and extinguished' " her first offer of $150,000. (*Id.* at p. 388.)

The *Wilson* court affirmed. After noting section 998's silence on whether a subsequent statutory offer extinguishes a prior one, *Wilson* relied on *T.M. Cobb*, *supra*, 36 Cal.3d 273, and *Distefano*, *supra*, 263 Cal.App.2d 380, to conclude the plaintiff's second offer extinguished her first offer. (*Wilson*, *supra*, 72 Cal.App.4th at pp. 389-390.) Specifically, *Wilson* agreed with *Distefano* that, in fairness, parties must be allowed to "review their respective positions" as more information is discovered and to "consider how the law applies before they are asked to make a decision that, if made incorrectly, could add significantly to their costs of trial." (*Wilson*, at p. 390.) Although *Wilson* acknowledged that "settlements achieved earlier rather than later are beneficial to the parties and thus to be encouraged" (*ibid.*), it expressed concern that, if a subsequent offer did not extinguish a previous one, then "[a] plaintiff might be encouraged to maintain a

9

higher settlement demand on the eve of trial and refuse to settle a case that should otherwise be settled if the plaintiff finds comfort in the knowledge that, even if the plaintiff receives an award less than his or her last demand, the plaintiff might still enjoy the cost reimbursement benefits of section 998 so long as the award exceeded a lower demand made by the plaintiff sometime during the course of the litigation" (*id*. at p. 391).[5]  Thus, under the so-called "last offer rule" applied in *Wilson* and *Distefano*, when a party makes successive unrevoked and unaccepted section 998 offers, the last such offer is the *only* operative offer with respect to the statutory benefits and burdens.[6]

We note the Legislature did not respond to the *Distefano* decision in 1971 when it repealed former section 997 and reenacted its contents in section 998.  Nor did the Legislature act to otherwise repudiate the last offer rule in several subsequent amendments of the statute.  But as Brownco acknowledges, none of

---

[5]    *Wilson* additionally concluded the legislative purpose "is generally better served by a bright line rule in which the parties know that any judgment will be measured against a single valid statutory offer — i.e., the statutory offer most recently rejected — regardless of offers made earlier in the litigation."  (*Wilson*, *supra*, 72 Cal.App.4th at p. 391.)

[6]    Brownco further contends that *One Star, Inc. v. STAAR Surgical Co.*, *supra*, 179 Cal.App.4th 1082, and *Palmer v. Schindler Elevator Corp.* (2003) 108 Cal.App.4th 154 — both of which rely on *Wilson* and *T.M. Cobb* — also support application of the last offer rule in this context.  *One Star* held that a party's first unaccepted statutory offer was the operative offer for purposes of section 998 when that party affirmatively revoked a second statutory offer before expiration of the 30-day statutory period.  (*One Star*, at pp. 1093-1095.)  In *Palmer*, the plaintiff served one defendant with a section 998 offer, and less than 30 days later served a second offer directed to all three defendants, jointly and severally.  Neither offer was accepted.  (*Palmer*, at p. 156.)  *Palmer* concluded the second offer extinguished the first offer, even though it found the second offer statutorily defective for failing to explicitly apportion its terms among the defendants to allow for individual acceptance or rejection.  (*Id*. at pp. 157-158.)

the Legislature's activity regarding section 998 has ever addressed successive offers, or any of the case law relating to this particular topic.[7]  And significantly, the Legislature has never acted to cabin this court's holdings in *Poster* and *T.M. Cobb* that a basic contract law principle may not be applied if it would defeat or conflict with section 998's policy of encouraging settlement.  (*Poster*, *supra*, 52 Cal.3d at pp. 271-272; *T.M. Cobb*, *supra*, 36 Cal.3d at p. 280.)  In light of the foregoing, we are not persuaded that the doctrine of legislative acquiescence mandates judicial application of the last offer rule in all multiple offer situations. (See *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1156.)[8]

---

[7]    *Distefano*, however, was legislatively noted for its holding on a different legal point, i.e., that attorney fee awards are contract damages when expressly authorized by contract.  (Off. of Sen. Floor Analysis, 3d reading analysis of Sen. Bill No. 1324 (1993-1994 Reg. Sess.) May 27, 1994, pp. 1-3.)

[8]    Civil Code section 3291 lends no credibility to the legislative acquiescence argument.  In expressly tying the calculation of prejudgment interest to a plaintiff's first section 998 offer, Civil Code section 3291 plainly reflects a legislative policy choice to encourage *early* settlement of personal injury actions and to deprive a trial court of discretion in the matter.  (See Assem. Off. of Research, 3d reading analysis of Sen. Bill. No. 203 (1981-1982 Reg. Sess.) Sept. 8, 1981, p. 1 [citing proponents' argument that "moving the effective date up to the initial offer of compromise provides a greater incentive for speedy resolution of judgments"].)  That policy choice provides no reasonable basis for implying a last-offer limitation in the context of section 998's silence on the matter, particularly since section 998's purpose is also to encourage early settlement. (*Culbertson v. R.D. Werner Co., Inc.*, *supra*, 190 Cal.App.3d at p. 711; see *Ray v. Goodman* (2006) 142 Cal.App.4th 83, 91.)  In any event, it is settled that a basic contract law principle may not be applied if it would defeat or conflict with section 998's policy of encouraging settlement.  (*Poster*, *supra*, 52 Cal.3d at p. 271; *T.M. Cobb*, *supra*, 36 Cal.3d at p. 280.)

### C. Application of Section 998 in This Case

We now determine whether allowing Mrs. Martinez to recover expert fees incurred from the date of her first offer is consistent with the language and purpose of section 998.  We also consider whether application of general contract law principles and the last offer rule would promote or defeat the statutory purpose.

Section 998 provides for cost shifting "[i]f an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award."  (§ 998, subd. (d).)  Although the language of the statute does not definitively answer the question before us, its terms are not contravened by allowing Mrs. Martinez to recover expert fees incurred after her August 2007 settlement offer in addition to those incurred after her February 2010 offer:  it is undisputed that each offer met the statutory time and content requirements of section 998, subdivision (b); that Brownco did not accept either offer; and that Brownco did not obtain a judgment more favorable than either offer.

Moreover, allowing such recovery would further the goals of section 998.  As explained, the Legislature sought to encourage settlement by affording the benefit of enhanced costs to parties who make reasonable settlement offers and imposing the burden of those costs on offerees who fail to obtain a result better than they could have achieved by accepting such offers.  (See *Bank of San Pedro v. Superior Court*, *supra*, 3 Cal.4th at p. 804.)  This purpose would be more fully promoted if the statutory benefits and burdens were to operate whenever the judgment or award is not more favorable than any of the statutory offers made.  Conversely, if the statutory benefits and burdens were to run only from the date of the last offer in circumstances such as these, plaintiffs may be deterred from making early offers or from later adjusting their demands.  This would inhibit settlement opportunities and be at direct odds with our prior recognition that "[t]he

12

more offers that are made, the more likely the chance for settlement." (*T.M. Cobb*, *supra*, 36 Cal.3d at p. 281.)

We next consider the effect of applying general principles of contract law. Brownco claims the statutory policy of encouraging settlements would be advanced by application of the basic contract principle that a new offer communicated prior to a valid acceptance of a previous offer extinguishes and replaces the previous one. As Brownco sees it, we should follow *Distefano* and *Wilson* and apply the last offer rule in this case. (*Distefano*, *supra*, 263 Cal.App.2d at p. 385; see *Wilson*, *supra*, 72 Cal.App.4th at pp. 389-390.)

In the proceedings below, the Court of Appeal declined to apply the last offer rule because it found the underlying contract principle inapt. In its view, a first offer that lapses due to nonacceptance within the 30-day statutory period has no enduring contractual effect and thus cannot be extinguished by a later offer. In such circumstances, the court reasoned, a party becomes statutorily entitled to recover expert fees when the offeree fails to obtain a more favorable judgment, and nothing in contract law requires divestment of this statutory benefit simply because the party makes the later offer. In effect, the court applied a "first offer rule," in which favorability of the judgment and recoverability of costs would be measured against the earliest reasonable offer regardless of later offers, with the trial court retaining discretion when awarding costs to address any gamesmanship concerns or any mischief or confusion arising from later offers.

For the reasons below, we conclude Mrs. Martinez is not precluded from recovering the expert witness costs she incurred between the dates of her first and second settlement offers. To reach this conclusion, we need not find the last offer rule *or* the first offer rule controlling in all circumstances. Indeed, for present purposes we may assume the propriety of applying the last offer rule where, as in *Distefano* and *Wilson*, an offeree obtains a judgment or award less favorable than a

13

first section 998 offer but more favorable than the later offer. The present circumstances, however, call for a different result.

Here, plaintiff made two statutory offers, and defendant failed to obtain a judgment more favorable than either. In cases such as this, section 998's policy of encouraging settlements is better served by *not* applying the general contract principle that a subsequent offer entirely extinguishes a prior offer. (See *Poster*, *supra*, 52 Cal.3d at p. 272.) Not only do the chances of settlement increase with multiple offers (*T.M. Cobb*, *supra*, 36 Cal.3d at p. 281), but to be consistent with section 998's financial incentives and disincentives, parties should not be penalized for making more than one reasonable settlement offer. Nor should parties be rewarded for rejecting multiple offers where each proves more favorable than the result obtained at trial. Accordingly, we hold that where, as here, a plaintiff serves two unaccepted and unrevoked statutory offers, and the defendant fails to obtain a judgment more favorable than either offer, the trial court retains discretion to order payment of expert witness costs incurred from the date of the first offer.

In addition to encouraging the making of more settlement offers, this conclusion promotes the public policy of compensating injured parties. As discussed, the policy of compensating injured parties is best served by according parties flexibility to adjust their settlement demands in response to newly discovered evidence. (*T.M. Cobb*, *supra*, 36 Cal.3d at pp. 281-282.) This can be accomplished by allowing a plaintiff who made an early settlement offer to "either propose a new offer in light of the newly discovered evidence or proceed to trial and present all the evidence in an attempt to be compensated fairly by the trier of fact's decision" (*id*. at p. 282), without having to forfeit the statutory benefits flowing from the early offer.

14

At the same time, holding a defendant responsible for expert witness costs in situations such as this will not confuse the section 998 process or give rise to disputes over the status of a statutory offer. To the contrary, such holding is easily applied and is consistent with the terms of the statute in permitting augmentation of costs whenever "an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award." (§ 998, subd. (d).) Predictability of the process will not be upset by inapplicability of the last offer rule in cases where each statutory offer proves either equal or more favorable to the offeree than the judgment or award at trial.

Finally, section 998 expressly states an award of expert witness fees is discretionary. (§ 998, subd. (d).) Accordingly, if a later offer results in mischief or confusion, or any gamesmanship appears, the court may address such concerns when considering what postoffer expert fees to award. In this regard, we note section 998 allows a court, in its discretion, to award a defendant expert fees incurred both before and after a defense settlement offer where the plaintiff fails to obtain a more favorable judgment or award. (§ 998, subd. (c)(1); see *ante*, fn. 3.) We are confident that, as in those situations, the discretion conferred upon trial courts suffices as a meaningful check against mischief and gamesmanship.

## CONCLUSION AND DISPOSITION

Where, as here, a plaintiff serves two statutory offers to compromise, and the defendant fails to obtain a judgment more favorable than either offer, recoverability of expert fees incurred from the date of the first offer is consistent with section 998's language and best promotes the statutory purpose to encourage the settlement of lawsuits before trial.

In reversing the order taxing the expert fees incurred between Mrs. Martinez's first and second statutory offers, the Court of Appeal ordered a remand to the trial court for its discretionary determination of her entitlement to such fees. The judgment of the Court of Appeal is affirmed.

**BAXTER, J.**

WE CONCUR:

CANTIL-SAKAUYE, C.J.
KENNARD, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

16

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Martinez v. Brownco Construction Company, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 203 Cal.App.4th 507
**Rehearing Granted**

_____

**Opinion No.** S200944
**Date Filed:** June 10, 2013

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Elihu Berle

_____

**Counsel:**

Lindahl Beck, George M. Lindahl and Laura H. Huntley for Defendant and Appellant.

Baker, Burton & Lundy and Albro L. Lundy III for Plaintiffs ad Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

George M. Lindahl
Lindahl Beck
660 South Figueroa Street, Suite 1500
Los Angeles, CA  90017-3457
(213) 488-3900

Albro L. Lundy III
Baker, Burton & Lundy
515 Pier Avenue
Hermosa Beach, CA  90254
(310) 376-9893