Filed 9/8/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIAN KAHN, | B259679 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC454443) |
| v. | |
| THE DEWEY GROUP, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth White, Judge.  Reversed in part and otherwise affirmed.

Gordon, Edelstein, Krepack, Grant, Felton & Goldstein, Roger L. Gordon and Joshua M. Merliss, for Plaintiff and Appellant.

Lewis, Brisbois, Bisgaard & Smith, Peter L. Garchie, Ruben Tarango and James P. McDonald, for Defendants and Respondents.

Plaintiff Brian Kahn sued 20 defendants he alleged were jointly and severally liable for causing him to suffer personal injury. Prior to trial, all 20 defendants jointly made a Code of Civil Procedure section 998[1] offer to settle Kahn's action for $75,000. Kahn did not accept the offer. Subsequently, the trial court granted a nonsuit as to 14 of the 20 defendants (hereafter, the dismissed defendants), and judgment was entered as to them. The case against the remaining six defendants went to a jury, but the jury was unable to reach a verdict and the trial court granted a mistrial. A retrial currently is pending.

Section 998 provides, among other things, that if a plaintiff fails to accept a defendant's settlement offer and fails to obtain a more favorable judgment, the court may require the plaintiff to pay the defendant's reasonable expert witness fees. (§ 998, subd. (c)(1).) Pursuant to this provision, the 14 dismissed defendants filed a memorandum of costs seeking, among other things, expert witness fees of $206,090 pursuant to section 998. The dismissed defendants asserted that defendants collectively had incurred nearly $300,000 in expert witness fees, and urged that they were entitled to recover 14/20ths (70 percent) of that total.

Kahn moved to strike or tax costs on the ground that a final judgment had not yet been entered against all 20 of the defendants on whose behalf the section 998 offer had been made, and thus the dismissed defendants could not yet recover expert witness fees. The trial court denied the motion to strike or tax costs, and it awarded the dismissed defendants expert witness fees. Kahn appealed.

We reverse the award of expert witness fees. If multiple defendants jointly make an offer to settle pursuant to section 998, whether the offer exceeds the judgment cannot be determined by comparing it to a judgment (or judgments) entered against only *some* of the offering defendants. Instead, the offer must be compared to the judgment(s) obtained against *all* defendants. Accordingly, because in the present case no judgment has yet

---

[1]     All subsequent undesignated statutory references are to the Code of Civil Procedure, and all rule references are to the California Rules of Court.

2

been entered with regard to six of the 20 defendants on whose behalf the section 998 offer was made, the trial court erred in awarding expert witness fees to the 14 dismissed defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### The Complaint

Kahn filed the present action on February 3, 2011, and filed the operative second amended complaint on August 15, 2011. The second amended complaint alleged that from 1996 to 2011, Kahn was a resident of a mobile home park located in San Fernando, California. Sometime prior to 1996, defendants and their predecessors-in-interest had used the land on which the mobile home park sat as an industrial waste disposal site. As a result, the property released hazardous gases to which Kahn had been exposed, causing him to suffer various injuries.

### II.

### Defendants' Section 998 Offer

In September 2013, all 20 defendants jointly made a statutory offer to compromise pursuant to section 998.[2] Section 998 provides that any party "may serve an offer in writing upon any other party to the action to allow judgment to be taken or an award to be entered in accordance with the terms and conditions stated." (§ 998, subd. (b).) If the offer is accepted, the court "shall enter judgment accordingly." (*Id*., subd. (b)(1).) If the offer is *not* accepted prior to trial or within 30 days after it is made, whichever occurs first, "it shall be deemed withdrawn." (*Id*., subd. (b)(2).)

---

[2] The 20 defendants on whose behalf the offer to compromise was made are: (1) The Dewey Group; (2) Storage Etc., LLC; (3) B Mortgage Acceptance Corp.; (4) Sky Terrace Investors, LLC; (5) SE Sky Terrace, LLC; (6) SE Sky SPE, LLC; (7) Storage Etc. Manager, LLC; (8) Angelo Capital Realty, LLC; (9) Laurent Opman; (10) Laurent Opman Living Trust; (11) Bruce Rothman; (12) Rothman-Kaye Family Trust; (13) Barbara Andrea Kaye; (14) Sky Dewey, LLC; (15) John Dewey; (16) Dewey Family Trust; (17) Rebecca Dewey; (18) Dewey-Koar, LLC; (19) SE Lopez 1, LLC; and (20) Greg Houge.

3

Here, defendants' offer, characterized as a "joint offer of judgment," provided that defendants "jointly shall pay Brian Kahn the sum of $75,000 in full and final satisfaction of all monetary claims, including all claims for attorneys' fees and costs," with all parties bearing their own costs and attorneys' fees. Kahn did not accept the offer.

## III.

## Trial and Judgment

Trial commenced in March 2014. On May 1, 2014, the trial court granted a nonsuit as to 14 defendants.[3] The court entered a judgment of dismissal as to those defendants on June 3, 2014, and the dismissed defendants electronically served notice of entry of judgment on June 9, 2014.

The case against the remaining six defendants (Storage Etc., LLC; SE Sky Terrace, LLC; SE Sky SPE, LLC; Storage Etc. Manager, LLC; Angelo Capital Realty, LLC; and Sky Dewey, LLC) went to the jury on May 6. After six days of deliberation, the jury advised the court it was deadlocked, and the court declared a mistrial. A retrial of the case against the six defendants remains pending.

## IV.

## The Dismissed Defendants' Memorandum of Costs and

## Kahn's Motion to Strike or Tax Costs

On June 26, 2014, the 14 dismissed defendants filed a memorandum of costs, which was superseded by an amended memorandum of costs filed later the same day. The amended memorandum of costs asserted that the 20 defendants collectively had incurred costs of $358,341, of which the 14 dismissed defendants were seeking 70 percent (14/20ths), or $250,838. Among the costs the dismissed defendants claimed

---

[3]    The 14 dismissed defendants are the Laurent Opman Living Trust; Rothman-Kaye Family Trust; Dewey Family Trust; Laurent Opman; Bruce Rothman; John Dewey; Rebecca Dewey; Barbara Andrea Kaye; Greg Houge; B Mortgage Acceptance Corp.; Sky Terrace Investors, LLC; SE Lopez 1, LLC; Dewey-Koar, LLC; and The Dewey Group.

were expert witness fees of $206,090, described as 70 percent of the total incurred expert witness fees of $294,415.

Kahn filed a motion to strike or tax costs. He contended that (1) the memorandum of costs was not timely served, and (2) the dismissed defendants were not entitled to recover expert witness fees under section 998 because no judgment had yet been entered as to six of the defendants who had served the offer to compromise. As to the second issue, Kahn explained as follows: "For example, one of the Defendants who joined in the 'Offer to Compromise' was SE Sky Terrace, LLC, the landowner. SE Sky Terrace, LLC, was not dismissed by the Court. If Plaintiff obtains a more favorable judgment against SE Sky Terrace, LLC at retrial than the amount offered in the joint 'Offer to Compromise,' Plaintiff would be the prevailing party against SE Sky Terrace, [LLC] and Defendants would not be entitled to augmented costs pursuant to CCP 998. [¶] If Defendants wished to send out valid offers that would have avoided this situation, they should have sent out individual offers from each separate Defendant. [¶] Since the offer was made jointly, the only way Defendants may recover augmented costs pursuant to Code of Civil Procedure section 998 is to obtain a defense verdict for all of the joint offerors. Since that has not occurred, the 'Offer to Compromise' is legally ineffective and Defendants are not entitled to augmented costs including the costs of expert witnesses."

The dismissed defendants opposed the motion. They asserted that both prior to and during trial, defense counsel attempted to obtain dismissal of the 14 dismissed defendants on the ground that there was no colorable claim against them. After a nonsuit was granted in their favor, the dismissed defendants sought costs, including expert witness fees, premised on the section 998 offer served September 20, 2013. The dismissed defendants contended the costs memorandum was timely served and Kahn did not object to any particular item of costs. As to Kahn's contentions that the offer to compromise was ineffective or the request for expert witness fees was premature, the dismissed defendants urged that California law permits joint offers if defendants are "united in interest and were sued on a theory of joint and several liability" or "it is

5

possible to determine whether a more favorable judgment was received as to each defendant." In the present case, the joint section 998 offer was valid and enforceable because Kahn alleged all defendants were jointly and severally liable and "[a]ny subsequent trial involving the remaining Defendants would not change the result achieved by the dismissed Defendants, which was a judgment of dismissal entered in their favor."

## V.

### Order Denying Motion to Strike or Tax Costs

The trial court denied Kahn's motion to strike or tax costs. The court found that (1) the dismissed defendants' costs memorandum was timely filed, and (2) the 14 dismissed defendants were entitled to recover their expert witness fees. The court reasoned as follows:

"[I]t appears that this CCP § 998 offer was made on behalf of all [Defendants] jointly for the sum of $75,000 to Plaintiff. The fact that six of the Defendants included on the CCP § 998 offer remain in the case pending retrial does not render the offer invalid. This joint offer was valid because the Defendants were alleged to be jointly and severally liable (at least for economic damages under Proposition 51) and also because the offer of joint liability imposed upon each Defendant the risk of being [jointly liable] for non-economic damages under Proposition 51. . . .

"Because Plaintiff failed to obtain a more favorable judgment or award as against the above dismissed Defendants, they are entitled to recover all post-offer costs, plus all expert witness fees actually incurred and reasonably necessary, before and after the settlement offer in the court's discretion. Thus, the fact that Defendants may have claimed costs for all of their expert witness fees from the inception of the case is not improper.

"As to Plaintiff's claim that if he obtains a more favorable judgment than the $75,000 offer at the retrial as against any of the six remaining Defendants, such as SE Sky Terrace, LLC, Defendants are representing to the Court that the amount of expert

6

witness fees was $294,415.18 and that the $206,090.64 represents an apportionment of those fees for 14 of 20 defendants. . . .  [¶] . . . [¶]

"Here, the Court in its discretion will award the dismissed Defendants $206,090.64 in witness fees, which Defendants represent as an apportionment of those witness fees . . . for 14 of 20 defendants.  The remaining six defendants are not being awarded their pro rata portion of the expert witness fees."

The dismissed defendants served notice of entry of an amended judgment, which included the award of costs, on October 21, 2014.  Kahn timely appealed.

## ISSUES AND STANDARD OF REVIEW

This appeal concerns two issues:

(1)     Is a memorandum of costs filed 17 days after electronic service of a notice of entry of judgment timely?

(2)     When all defendants make a joint pretrial offer to compromise pursuant to section 998, and then judgment is entered in favor of some defendants while the case remains pending against other defendants, can the prevailing defendants recover expert witness fees under section 998?

Because both issues involve the application of law to undisputed facts, our review is de novo.  (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 (*Martinez*); see also *Westamerica Bank v. MBG Industries, Inc*. (2007) 158 Cal.App.4th 109, 130 ["The issue of whether a section 998 offer is enforceable, and the application of section 998 to an undisputed set of facts, present questions of law, which we review de novo."].)

## DISCUSSION

## I.

## The Memorandum of Costs Was Timely Filed

*A.     Background*

Rule 3.1700(a)(1) provides in relevant part:  "A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after . . . the date of service of written notice of entry of judgment or dismissal."

7

Section 1013, subdivision (a) provides that service by mail is complete at the time of deposit in a post office or mail box, "but *any* period of notice and *any* right or duty to do *any* act or make *any* response within any period or on a date certain after service of the document, which time period or date is prescribed by statute or rule of court, shall be extended five calendar days, upon service by mail, if the place of address and the place of mailing is within the State of California . . . .  This extension applies in the absence of a specific exception provided for by this section or other statute or rule of court."  (Italics added.)

Section 1010.6, subdivision (a)(4) provides a similar extension of time to file where service of a triggering document is made electronically.  It says:  "Electronic service of a document is complete at the time of the electronic transmission of the document or at the time that the electronic notification of service of the document is sent.  However, *any* period of notice, or *any* right or duty to do *any* act or make *any* response within *any* period or on a date certain after the service of the document, which time period or date is prescribed by statute or rule of court, shall be extended after service by electronic means by two court days. . . .  [¶] . . . [¶]  This extension applies in the absence of a specific exception provided by any other statute or rule of court."  (Italics added.)

In *Nevis Homes LLC v. CW Roofing, Inc*. (2013) 216 Cal.App.4th 353 (*Nevis*), the prevailing defendant filed a memorandum of costs nineteen days after the plaintiff dismissed its complaint and mailed written notice of entry of dismissal.  The court held the memorandum of costs was timely:  "No statute or rule of court 'specifically' exempts cost memoranda from the five-day mailing extension in section 1013, subdivision (a). Moreover, section 1013, subdivision (a), specifies the items to which the extension does not apply.  A memorandum of costs is not among those exceptions.  Nor does rule 3.1700 specifically exempt a costs memorandum from the time extension provided by section 1013, subdivision (a). . . . We are not authorized to rewrite the plain language of a statute to conform to an assumed intent that does not appear from the language."  (*Nevis*, at p. 357.)

8

### B. Section 1010.6 Extends the Time to File A Memorandum of Costs Under the Facts of the Present Case

Kahn does not contend *Nevis* was wrongly decided or does not apply to electronic service. He urges, however, that section 1010.6 should not apply in the present case because the dismissed defendants filed and served *both* the notice of entry of judgment *and* the memorandum of costs. In other words, Kahn contends that the two-court-day extension of time provided by section 1010.6 is available only to the party on whom notice of entry of judgment is served, *not* to the party that serves such notice.

We are aware of one case, *Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc.* (2000) 85 Cal.App.4th 1042 (*Westrec*), that arguably supports Kahn's contention. *Westrec* considered whether section 1013 extended a trial court's time to grant a motion for new trial where notice of entry of judgment was served by mail. (*Westrec*, at p. 1047.) The Court of Appeal held that section 1013 did not extend the trial court's time to act, concluding, among other things, that section 1013 provides an extension only to "*the person served* by mail." (*Westrec*, at p. 1048, italics added.) In so concluding, the court opined that the relevant statutory language was ambiguous, and the legislative history supported the conclusion that the extension of time provided by section 1013 applied only to the person being served. (*Westrec*, at p. 1049.)

*Westrec* does not control our analysis in this case. Whatever the Legislature may have intended when it enacted section 1013—an issue we do not reach—the question before us is section 1010.6, not section 1013. Even assuming that the Legislature intended to limit the application of section 1013 to the party being served, nothing suggests it had the same intention nineteen years later when it adopted section 1010.6. Indeed, the legislative history of section 1010.6 is completely silent on this issue.

Moreover, we do not agree with the *Westrec* court that the language of either section 1013 or section 1010.6 is ambiguous or is reasonably susceptible of that court's interpretation. As we have said, section 1010.6, subdivision (a)(4)—like section 1013, subdivision (a)—extends by a specified number of days "*any* right or duty to do *any* act or make *any* response within any period . . . after the service of the document" by

9

electronic means.  (Italics added.)  By its plain language, therefore, the statute does not limit the extension to the party on whom a document is served.

Our Supreme Court has cautioned against "reading into a statute language it does not contain or elements that do not appear on its face."  (*Martinez v. Regents of University of California* (2010) 50 Cal.4th 1277, 1295 (*Martinez*).)  As the court has said, "[i]t is unreasonable to conclude that [the Legislature] intended to require [parties] to comply with [a statute's] express requirements *and* to scour committee reports for other possible requirements not visible in the statutory language.  The committee report may not create a requirement not found in [the statute] itself."  (*Id.* at p. 1296.)  The Supreme Court's analysis has particular force here, where adopting *Westrec*'s analysis would require parties not only to scour the legislative history of section 1010.6, but the legislative history of section 1013 as well.

For all of these reason, we conclude that if the Legislature wishes to limit the two-day extension provided in section 1010.6 to the party being served, it must say so expressly.  In light of the expansive language of the statute, we decline to construe it as a trap for the unwary.  (*Martinez*, *supra*, 50 Cal.4th at p. 1296; *Corrie v. Soloway* (2013) 216 Cal.App.4th 436, 452.)  We therefore conclude that the dismissed defendants' memorandum of costs was timely.

## II.

### The Trial Court Erred in Awarding the Dismissed
### Defendants Their Expert Witness Fees

*A.      Section 998 and the Principles Governing Its Application*

Except as otherwise expressly provided by statute, a prevailing party "is entitled as a matter of right to recover costs."  (§ 1032, subd. (b).)  Recoverable costs generally do not include the fees of expert witnesses not ordered by the court.  (§§ 1032, 1033.5, subd. (b)(1).)  Such expert witness fees are recoverable in some circumstances, however, when a more favorable judgment for the defendant follows a plaintiff's rejection of a pretrial section 998 settlement offer, thus triggering section 998's cost-shifting provisions.  (See *Martinez*, *supra*, 56 Cal.4th at p. 1019 & fn. 3.)

10

As relevant here, section 998, subdivision (c)(1), provides: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court . . . , in its discretion, may require the plaintiff to pay a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

"The policy behind section 998 is 'to encourage the settlement of lawsuits prior to trial.' . . . Section 998 aims to avoid the time delays and economic waste associated with trials and to reduce the number of meritless lawsuits." (*Martinez*, *supra*, 56 Cal.4th at p. 1019, citations omitted.)

B.      *Joint Section 998 Offers*

On its face, section 998 does not address offers to compromise made by or to multiple parties: It refers to an offer made by "*a* defendant," not by "defendants." (*Id*., subd. (c)(1), italics added.) It also does not facially address multiple judgments, referring in the singular to "*a* more favorable judgment." (*Ibid*., italics added.)

Although section 998 thus is silent as to multiple party offers and judgments, courts have held that at least in some circumstances, section 998 can apply to joint offers and/or multiple judgments. The cases have taken at least two approaches to the issues of joint offers and multiple judgments, as we now discuss.

1.      The "Absolute Prevailing Party" Approach

In *Winston Square Homeowner's Assn. v. Centex West, Inc.* (1989) 213 Cal.App.3d 282 (*Winston Square*), a homeowner's association sued the developer and subcontractors of a townhouse development for alleged construction defects, including drainage problems. Prior to trial, all defendants jointly made an offer pursuant to section 998 to settle the case for $500,000; the homeowner's association rejected the

11

offer.  (*Winston Square*, at pp. 293-294.)  The parties then settled all issues of the lawsuit except for those relating to drainage.  (*Id.* at p. 286, fn. 1.)

The trial court bifurcated the trial of the drainage issues and, following a first phase, concluded that all drainage claims were barred by the statute of limitations.  (*Winston Square*, *supra*, 213 Cal.App.3d at pp. 286-287.)  As relevant here, judgment was entered against the homeowner's association and in favor of Wilsey & Ham (Wilsey), the drainage subcontractor.  (*Ibid*.)  Wilsey also sought and was awarded its expert witness fees pursuant to section 998.  (*Winston Square*, at pp. 293-294.)

The homeowner's association appealed the judgment and costs award.  Among the issues it raised on appeal was Wilsey's entitlement to expert witness fees under section 998.  (*Winston Square*, *supra*, 213 Cal.App.3d at p. 294.)  The homeowner's association contended that because there was never a trial on damages or a judgment for damages against which the joint section 998 offer could be measured, the trial court erred in awarding Wilsey its witness fees.  (*Winston Square*, at p. 294.)

The Court of Appeal disagreed, concluding that because Wilsey was an "absolute prevailing party," it was entitled to recover its witness fees under section 998.  The court explained:  "Joint offers by more than one defendant fall within the provisions of section 998 when defendants are united in interest and are sued on a theory of joint and several liability.  (*Brown v. Nolan* (1979) 98 Cal.App.3d 445, 451; see also *Stiles v. Estate of Ryan* (1985) 173 Cal.App.3d 1057, 1066.)  Here, all defendants were not united in interest.  [Fn. omitted.]  Nevertheless, the application of section 998 appears appropriate in this case.  Though the joint offer did not break down the offer as to particular areas of damage or defendants, [Wilsey] received a judgment in its favor.  [Wilsey] was an *absolute prevailing party*—it was completely absolved of any liability.  As [Wilsey] contends, the subsequent settlement between plaintiff and the other defendants on issues other than drainage was irrelevant as far as [Wilsey] was concerned.  [¶]  The trial court did not err when it allowed [Wilsey] to recover its expert witness fees as costs." (*Winston Square*, at p. 294, italics added.)

12

2.	The "Comparison" Approach

In several cases, courts have adopted an approach to evaluating joint section 998 offers that is very different than *Winston Square*'s "absolute prevailing party" approach. We consider the cases applying this "comparison" approach below.

*a.	Offers jointly made by plaintiffs*

*Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241 (*Fortman*) involved a section 998 offer jointly made by two plaintiffs. There, a child, Nichole, sustained extensive permanent injuries when she was ejected from her parents' jeep as a result of a defective vehicle door. Nichole and her mother sued several defendants, including Hemco. Prior to trial, Nichole and her mother jointly made an offer to Hemco pursuant to section 998 to settle the case for $1 million; Hemco declined to respond to the offer. (*Fortman*, at p. 262.)

By the time the case went to a jury, as a result of settlements and voluntary dismissals, only Nichole and Hemco remained in the case. (*Fortman*, *supra*, 211 Cal.App.3d at p. 249.) The jury returned a verdict finding Hemco 25 percent liable for Nichole's injuries, and awarded her damages of more than $23 million, of which approximately $17 million was for economic losses and $6 million was for noneconomic losses. (*Id.* at p. 250.) The court entered judgment on the jury verdict and awarded Nichole pretrial interest pursuant to Civil Code section 3291 based on the section 998 offer.[4]

---

[4]	At the relevant time, Civil Code section 3291 provided: "In any action brought to recover damages for personal injury sustained by any person resulting from or occasioned by the tort of any other person, corporation, association, or partnership, whether by negligence or by willful intent of the other person, corporation, association, or partnership, and whether the injury was fatal or otherwise, it is lawful for the plaintiff in the complaint to claim interest on the damages alleged as provided in this section. [¶] If the plaintiff makes an offer pursuant to Section 998 of the Code of Civil Procedure which the defendant does not accept prior to trial or within 30 days, whichever occurs first, and the plaintiff obtains a more favorable judgment, the judgment shall bear interest at the legal rate of 10 percent per annum calculated from the date of the plaintiff's first offer pursuant to Section 998 of the Code of Civil Procedure which is exceeded by the judgment, and interest shall accrue until the satisfaction of judgment."

13

Hemco appealed, contending, inter alia, that the section 998 offer was invalid because it was made jointly by Nichole and her mother. (*Fortman*, *supra*, 211 Cal.App.3d at pp. 262-263.) In support, Hemco cited *Randles v. Lowry* (1970) 4 Cal.App.3d 68 (*Randles*), which held a joint offer a "nullity" because it was made by a defendant to three plaintiffs without designating how it should be divided among them. (*Fortman*, at p. 263.) The *Fortman* court declined to apply *Randles* to conclude that the section 998 offer was ineffective to support the award of prejudgment interest. It explained: "In our case, Hemco would have us apply the rule of *Randles*, that joint offers are a nullity, without examining the reason for the rule. The reason, as both *Randles* and [a subsquent decision] illustrate, is that in those cases it could not be determined after trial whether the individual plaintiffs received more than they would have received had the offer to compromise been accepted. In our case, however, it is absolutely clear that Nichole received a greater amount in damages after trial than she would have received had Hemco accepted the joint offer even if the entire amount of the offer, $1 million, is attributed to her. Nichole's mother dismissed her action, leaving Nichole as the sole plaintiff for purposes of damages. Moreover, Nichole's $23 million-plus award leaves no doubt in anyone's mind that her recovery far exceeded the statutory offer. [¶] Under these facts, therefore, we decline to mechanically apply *Randles*." (*Fortman*, at p. 263.)

The court adopted a similar analysis in *Stallman v. Bell* (1991) 235 Cal.App.3d 740 (*Stallman*) to conclude that a joint offer by two plaintiffs supported an award of expert witness fees under section 998. There, the plaintiffs (an individual and a decedent's estate) made a joint section 998 offer to several defendants, who did not accept it. After the plaintiffs received a judgment in their favor, the trial court awarded them costs, including expert witness fees. (*Stallman*, at p. 744.) Defendants appealed, contending that the section 998 offer was void from its inception because it was made jointly by the individual plaintiff and the decedent's estate. (*Stallman*, at p. 745.) *Stallman* disagreed and affirmed, noting that although the section 998 offer was joint, the jury's award was also joint. Accordingly, "there is but a single verdict to be compared to a single offer, and from this comparison it can be clearly determined whether or not the

14

[plaintiffs] received a more favorable judgment." (*Stallman*, at p. 747.) Because the joint offer "does not prevent a determination of whether [plaintiffs] received a more favorable judgment," it was valid and plaintiffs were properly awarded expert witness fees under section 998. (*Ibid.*)

### b. Offers jointly made by defendants

In *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141 (*Persson*), the plaintiff sued his former business partner and a corporation on a variety of tort theories. Before trial, the individual defendant and the corporate defendant made an offer under section 998 to allow judgment to be taken against them, jointly and severally, in the amount of $500,000. (*Persson*, at p. 1169.) Plaintiff declined the offer. Following a jury trial, judgment was entered (a) in favor of plaintiff and against the individual defendant for $306,000, and (b) in favor of the corporate defendant. (*Id.* at p. 1151.)

The corporate defendant filed a motion under section 998 for fees because the plaintiff failed to recover more than the $500,000 offered. (*Persson*, *supra*, 125 Cal.App.4th at p. 1169.) The trial court denied the motion, ruling that defendants' section 998 offer was invalid because it was " 'a joint and several offer for multiple defendants and did not separate out and distinguish between them and the separate causes of action applicable to each.' " Accordingly, the trial court said, the plaintiff " 'was not in a position to evaluate the offer.' " (*Persson*, at p. 1169.)

The Court of Appeal reversed, concluding that defendants' section 998 offer was not rendered invalid by the fact that it was jointly made. (*Persson*, *supra*, 125 Cal.App.4th at p. 1172.) The court explained that for a joint section 998 offer to be valid, the offeree must be able to evaluate the likelihood of receiving a more favorable verdict at trial. (*Persson*, at p. 1170.) The joint nature of the present offer did not prevent the plaintiff from fairly evaluating it: "[I]t is incomprehensible why a plaintiff would be unable to evaluate an offer in which each defendant offers to have judgment taken against him, jointly and severally, in a stated amount, even if one defendant has no liability on one of the plaintiff's claims. The plaintiff need only assess the chances of recovery on each of his claims, no matter which defendant is liable, and add them

15

together. If the joint offer exceeds that amount, the plaintiff should accept it. In this case, [plaintiff] had only to assess his chances of recovering more than $500,000 on all of his claims against both defendants. . . . The evaluation is straightforward, as is the ability to determine after trial whether the offer was more favorable than the judgment." (*Id.* at pp. 1170-1171.)

The court also rejected the plaintiff's contention that the joint offer placed him in an untenable position because he had to "either take the unapportioned offer 'or perhaps risk paying enormous post-offer attorneys' fees to only one of the Defendants.' " (*Persson*, *supra*, 125 Cal.App.4th at p. 1171.) The court explained: "There is no such risk. The offer was joint, and [plaintiff] could not accept the offer as against one defendant and not the other. Even if, after trial, one defendant were found to have no liability, *that defendant could not claim post-offer costs against* [*plaintiff*] *unless the other defendant's liability was also less than the offer, since the offer was a joint offer*." (*Id.* at p. 1171, italics added.)

C. *The "Comparison" Approach Is More Consistent with the Statutory Purpose of Encouraging Reasonable Settlements and Avoiding Gamesmanship*

Where the language of section 998 does not provide "a definitive answer for a particular application of its terms," courts have been directed to adopt a construction consistent with the policies section 998 seeks to further. (*Martinez*, *supra*, 56 Cal.4th at p. 1020.) The "comparison" approach best does so, as we now explain.

*Policy of encouraging reasonable settlements*. As we have said, the policy behind section 998 is to " 'encourage the settlement of lawsuits prior to trial' [citations] . . . [by providing] 'a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer.' (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804.) At the same time, the potential for statutory recovery of expert witness fees and other costs provides parties 'a financial incentive to make reasonable settlement offers.' " (*Martinez*, *supra*, 56 Cal.4th at p. 1019.)

16

Whether a settlement offer is "reasonable" for section 998 purposes is determined by comparing the settlement offer against the offeree's actual recovery. "As explained, the Legislature sought to encourage settlement by affording the benefit of enhanced costs to parties who make reasonable settlement offers and imposing the burden of those costs on offerees *who fail to obtain a result better than they could have achieved by accepting such offers*." (*Martinez*, *supra*, 56 Cal.4th at p. 1025, italics added.)

Where an offer is jointly made by a group of defendants, we conclude the relevant comparison for section 998 purposes is of (a) the offer made by the group of defendants, and (b) the recovery obtained *against that same group of defendants*. That is, if two or more defendants jointly make an offer to settle, the "reasonableness" of that offer cannot be determined by comparing the judgment entered against fewer than all of the offering defendants. Instead, the offer must be compared to the judgment (or judgments) obtained against *all* defendants. The "comparison" approach thus is consistent with the policy section 998 seeks to further because it permits the offering party to recover its expert witness fees *only* if the offer and judgment concern the same parties, such that the judgment reveals whether the offer was reasonable.

The "absolute prevailing party" approach, in contrast, does not require the comparison of a joint offer and a joint judgment. Instead, it permits an offering party who submits a joint offer to recover witness fees under section 998 so long as that party has "absolutely prevailed" against the offeree—without regard to the recovery against the other offerors.

The flaw in the "absolute prevailing party" approach is well illustrated by the present case. Here, 20 defendants made a joint offer to settle this case for $75,000. To evaluate the reasonableness of that offer, Kahn had to "assess the chances of recovery on each of his claims, no matter which defendant is liable, *and add them together*. If the joint offer exceeds that amount, the plaintiff should accept it." (*Persson*, *supra*, 125 Cal.App.4th at p. 1170, italics added.) Here, however, there is not yet a final judgment between Kahn and all 20 defendants, against which the joint settlement offer can be measured. As a result, all we can determine at this juncture is that the offer made

17

by *20* defendants exceeds Kahn's recovery against *14*. Neither we nor the trial court thus can evaluate whether the offer exceeded the judgment, and the award of expert witness fees therefore was premature.

Defendants suggest that the premature award of section 998 witness fees is not unfair because defendants tried repeatedly, but unsuccessfully, to "obtain the dismissal of the subset of defendants comprising [] individual persons, family trusts, and several unrelated business entities, on the grounds that there was never a colorable claim against these individuals and entities." Whatever the merits of defendants' claim factually, it has no relevance legally. *Defendants*, not Kahn, controlled the form in which their settlement offer was made. If some defendants believed Kahn did not have a colorable claim against them, they were free to make a separate offer to Kahn. Instead, because all 20 defendants elected to make a joint settlement offer, defendants must wait until a final judgment has been entered against the same 20 defendants before seeking expert witness fees under section 998.

*Avoiding uncertainty and gamesmanship*. Our Supreme Court has directed that when interpreting section 998, courts "should assess whether the particular application injects uncertainty into the section 998 process. If a proposed rule would encourage gamesmanship or spawn disputes over the operation of section 998, rejection of the rule is appropriate. . . . In other instances, courts have adopted bright-line rules in order to avoid confusion." (*Martinez*, *supra*, 56 Cal.4th at p. 1021, citations omitted.)

Interpreting section 998 as defendants suggest would create precisely the opportunity for gamesmanship we have been directed to avoid. That is, defendants suggest that even if a section 998 offer has been jointly made, particular defendants should be permitted to recover expert witness fees under section 998 if they prevail against the plaintiffs. Such a rule, however, would create an incentive in every multi-defendant case for the defendants to jointly make a low-ball offer that would guarantee individual defendants enhanced costs if any *one* of them were to be dismissed or found not liable. Such a rule would not encourage the making or accepting of reasonable offers—to the contrary, it would encourage defendants to make *unreasonable* offers for

18

the sole purpose of recovering enhanced fees, and would unfairly pressure plaintiffs to accept such offers.

### D. The Cases on Which Defendants Rely Do Not Support Their Analysis

Defendants cite two cases they contend suggest that expert witness fees were properly awarded here. We do not agree. In both cases, multiple defendants jointly made section 998 offers that exceeded the judgments the plaintiffs recovered after trial; in both cases, the appellate courts held the section 998 offers were valid and supported awards of enhanced costs in favor of the defendants. (*Brown v. Nolan*, *supra*, 98 Cal.App.3d 445; *Santantonio v. Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 115-116 (*Santantonio*).) Defendants contend, therefore, that these cases support their recovery of expert witness fees because they establish that "where defendants are alleged to be joint[ly] and severally liable for a plaintiff's damages, joint offers by two or more defendants are valid under section 998."

The problem with defendants' analysis is that its premise (the section 998 offer was valid) does not logically support its conclusion (the award of expert witness fees to the 14 dismissed defendants was therefore proper). There is no real dispute that defendants' section 998 offer is valid and could support an award of witness fees *in appropriate circumstances*. The issue before us is whether the present case—in which a judgment has yet to be entered as to six of the 20 defendants on whose behalf the section 998 offer was made—presents such circumstances. Neither *Brown* nor *Santantonio* sheds any light on that question, because in each case judgment was rendered with respect to *all* defendants before any section 998 fees were sought.

For all of these reasons, we conclude that the trial court's award of expert witness fees in this case was premature.

## DISPOSITION

The judgment is reversed insofar as it awards expert witness fees to the 14 dismissed defendants under section 998, and is otherwise affirmed. The trial court is directed to hold in abeyance the dismissed defendants' request for expert witness fees pending entry of final judgments as to all defendants. At such time as final judgments have been entered as to all defendants, the parties should be given the opportunity to submit amended briefs on the section 998 expert witness fees issue, and the trial court should redetermine that issue consistent with the views expressed in this opinion. Kahn is awarded his appellate costs.

**CERTIFIED FOR PUBLICATION**

EDMON, P. J.

We concur:

KITCHING, J.

JONES, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.