Filed 6/10/21  P. v. Solano CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B303993 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA042134) |
| v. | |
| GABRIELA MARTHA SOLANO, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Affirmed.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Gabriela Martha Solano (defendant) appeals the trial court's denial of her petition for relief under Penal Code section 1170.95.[1]  Although, as the People concede, the trial court erred in striking down section 1170.95 as unconstitutional, we nevertheless affirm because the jury's special circumstance finding renders defendant ineligible for section 1170.95 relief as a matter of law.  Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

I.    **Facts**[2]

A.    *The underlying crimes*

On a Tuesday night in late September 1998, defendant and four others—her boyfriend (Armando Perez), her roommate (Brenda Moreno), and two of her boyfriend's friends (Dennis Barroso and Brian Scott)—drove around the San Gabriel Valley committing a rash of violent crimes.

Defendant was the driver, and was behind the wheel of her own SUV.

Before starting the crime spree, defendant drove the others to a store to buy knitted black gloves and then made two further

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

[2]    We draw these facts from our prior, unpublished appellate opinion affirming defendant's convictions.  (*People v. Barroso et al.* (Apr. 24, 2001, B135322).)

2

stops so that the others could pick up several shotguns and handguns.

The group started with a carjacking in Diamond Bar. Around 10:15 p.m., defendant followed a woman in an Infiniti until defendant's boyfriend and his two friends hopped out and, with shotguns and handguns on display, forced the Infiniti driver out of her car. They demanded her purse, her watch and her necklace, and drove off in her car.

Then the group attempted a second carjacking in Rosemead. Once again, defendant followed the intended victim into his driveway. When defendant's boyfriend and his friend Barroso jumped out of her SUV and pointed their shotguns at the driver of the other car, he honked his horn and put his car in reverse. Although defendant repositioned her SUV to block his escape, he managed to drive away—but not before Barroso shot at the car (and missed).

Then the group finished off their spree with robbery and murder. Around 2:00 a.m., defendant drove up next to several pedestrians returning from a convenience store—namely, Gilbert Rivas (Rivas), Rivas's fiancée, Rivas's teenage brother and the fiancée's teenage son. Defendant's boyfriend and Barroso leaned out of the open windows of defendant's SUV with their shotguns on display and issued a gang challenge. The pedestrians said that they "don't bang," and defendant's boyfriend proclaimed his allegiance to the "Valinda Flats" gang. Defendant's boyfriend, both of his friends, and defendant's roommate then jumped out of the car with firearms at the ready. Rivas's brother handed over cash, some cigarettes and his new black Nikes. Defendant's roommate asked the fiancée to hand over her rings. When the fiancée balked, explaining that the rings had little monetary

value but great sentimental value, defendant's roommate punched the fiancée in the face. Rivas told the roommate that she did not need to hurt his fiancée nor disrespect them. That is when Barroso shot Rivas in the stomach, and defendant's boyfriend shot him twice more in the back and head. Rivas died from the gunshot wounds.

### B.    *Prosecution, conviction and appeal*

In the operative amended information, the People charged defendant with (1) the murder of Rivas (§ 187, subd. (a)), (2) the second degree robbery of Rivas's brother (§ 211), (3-5) the attempted robberies of Rivas, Rivas's fiancée, and the fiancée's son (§§ 211, 664), (6) the carjacking of the Infiniti driver (§ 215, subd. (a)), and (7) the second degree robbery of the Infiniti driver (§ 211). As to the murder, the People alleged the special circumstance that the "murder . . . was committed . . . while the . . . defendant[s] . . . were engaged in the commission of . . . robbery and attempted robbery" pursuant to section 190.2, subd. (a)(17). As to the counts involving Rivas and his group, the People further alleged that a principal used and discharged a firearm resulting in great bodily injury or death (§§ 12022.5, subd. (a), 12022.53, subds. (d) & (e)(1)), and that the crimes were "committed for the benefit of, at the direction of, and in association with a criminal street gang" (§ 186.22, subd. (b)(1)).

The matter proceeded to a jury trial. The jury was instructed that they could convict defendant of Rivas's murder as a direct aider and abettor or on a felony-murder theory. With respect to the special circumstance allegation, the jury was instructed that the allegation could be found true only if the jury found, beyond a reasonable doubt, that (1) defendant was the "actual killer," (2) defendant "aided, abetted, or assisted . . . in

4

the commission of the murder in the first degree" "with the intent to kill," or (3) defendant "aided, abetted, or assisted" the "commission or attempted commission of the crime of robbery" "as a major participant" and "with reckless indifference to human life." In closing arguments, the prosecutor argued that defendant was liable for murder under the felony-murder theory, and that the special circumstance was true because she was a major participant in the robberies and attempted robberies who acted with reckless indifference to human life.

The jury found defendant guilty of all charges and found true the special circumstance, the firearm allegations, and the gang allegation.

The trial court imposed a prison sentence of life without the possibility of parole (LWOP) plus 42 years and 4 months. Specifically, the court imposed a sentence of LWOP for the special circumstance murder plus a consecutive 25 years to life for the firearm allegation. The court then imposed a consecutive sentence of four years and four months for the robbery of Rivas's brother; two consecutive sentences of four years for two of the attempted robbery counts; and a consecutive sentence of five years for the carjacking. The court either stayed the remaining sentences or ran them concurrently.

Defendant appealed, and we affirmed her convictions and sentence. In response to her argument that the trial court erred in admitting the evidence of the uncharged attempted carjacking and use of firearms in Rosemead, we reasoned that this evidence was relevant to establish that defendant and the others "harbored the intent to kill[] or acted with reckless indifference to human life" and to disprove defendant's proffered defense that

5

she did not know the others intended or rob or kill and did not see them bring guns into her car.

In 2018, the Governor commuted defendant's sentence to 20 years to life.

## II. Procedural Background

On March 13, 2019, defendant filed a petition seeking resentencing under section 1170.95 for her murder conviction. The court issued an order summarily denying relief on the ground that section 1170.95 was unconstitutional because it impermissibly amended Proposition 7 and Proposition 115 as well as violated Marsy's Law and the separation of powers.

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in summarily denying her section 1170.95 petition. As the People concede and as we agree, the trial court erred in declaring section 1170.95 to be unconstitutional on any of the grounds it specified. (*People v. Lopez* (2020) 51 Cal.App.5th 589, 600-603 [section 1170.95 does not improperly amend Proposition 7 or Proposition 115]; *People v. Johns* (2020) 50 Cal.App.5th 46, 66-69 [section 1170.95 does not violate Marsy's Law or the separation of powers].) However, the People urge an alternate ground for affirmance—namely, that defendant is ineligible for relief under section 1170.95 as a matter of law by virtue of the jury's special circumstance finding. We may consider this alternative argument (*People v. Smithey* (1999) 20 Cal.4th 936, 972), and we do so independently because it turns on questions of statutory construction and the application of law to undisputed facts. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018; *People v. Blackburn* (2015) 61 Cal.4th 1113, 1123.)

6

## I. Effect of Jury's Special Circumstance Finding

Section 1170.95 authorizes a defendant "convicted of felony murder or murder under a natural and probable consequences theory" to vacate her murder conviction if, as a threshold matter, she makes a "prima facie showing" of entitlement to relief. (§ 1170.95, subds. (a) & (c).) This, in turn, requires a showing that, among other things, she "could not be convicted of first or second degree murder" under the amendments to the murder statutes that became effective on January 1, 2019. (*Id.*, subd. (a)(3).) These statutes, even as amended, still authorize a murder conviction based on a theory of vicarious liability if the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e)(3).)

Applying these statutes, we conclude that defendant has not made a prima facie showing of her entitlement to relief under section 1170.95. That is because the jury in this case, by virtue of finding the special circumstance allegation to be true, necessarily found that defendant was a major participant in the underlying felony and acted with reckless indifference to human life. This prior finding renders defendant "not eligible for relief under section 1170.95 as a matter of law." (*People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Gomez* (2020) 52 Cal.App.5th 1, 14-17, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141-1143, review granted Oct. 14, 2020, S264284; but see *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179-1180, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94, review granted July 22, 2020, S262835; *People v. York*

7

(2020) 54 Cal.App.5th 250, 258-263, review granted Nov. 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956-958, review granted Apr. 28, 2021, S267802; *People v. Secrease* (2021) 63 Cal.App.5th 231, 236, 247 (*Secrease*).)

Defendant resists this conclusion with what boil down to two arguments.

First, she argues that the jury's prior finding is no longer valid because (1) our Supreme Court altered the manner in which appellate courts are to review this particular special circumstance finding for substantial evidence in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and (2) the jury's finding in this case could not withstand *Banks*'s and *Clark*'s more probing substantial evidence review. Although, as noted above, the Courts of Appeal are divided as to whether *Banks* and *Clark* undermine the effect of a jury's prior special circumstance finding, our division in *People v. Nunez* (2020) 57 Cal.App.5th 78, review granted January 13, 2021, S265918 (*Nunez*), has sided with those cases holding that the prior jury finding remains valid—and thus remains a basis for denying relief under section 1170.95—unless and until the defendant successfully overturns the finding in a habeas petition. (*Id.* at pp. 93-97.) Because defendant has not yet done so, the jury's prior special circumstance finding precludes relief under section 1170.95. Defendant urges us to follow the cases disagreeing with *Nunez*, but we find those cases unpersuasive for the reasons spelled out in *Nunez*.

Second, defendant repeatedly argues that she never got out of her SUV when the others confronted, harassed and ultimately shot Rivas and his companions. However, defendant's specific whereabouts during that incident are not dispositive of her role

8

during that incident or her awareness of the potential for violence that bears on whether she acted with reckless indifference to the value of human life. This fact does not in any event negate the jury's special circumstance finding.

## II. Continued Validity of the Jury's Special Verdict Finding

Even if we were to hedge our bets and not follow *Nunez* in light of the deep split of authority on the question pending before our Supreme Court, our task would be to undertake for ourselves the task that *Nunez* entrusts to a trial court considering a subsequent habeas corpus petition—that is, evaluating whether the jury's special circumstance finding is supported by substantial evidence through the prism of *Banks* and *Clark*. (*Secrease*, *supra*, 63 Cal.App.5th at p. 255 [so holding].) In assessing whether substantial evidence supports a finding, we view the record in the light most favorable to that finding. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) That evaluation leads to the conclusion that the jury's finding must stand, and that relief under section 1170.95 is accordingly unavailable to defendant as a matter of law. Because the finding that renders defendant ineligible for relief—like the special circumstance itself—requires proof beyond a reasonable doubt that defendant (1) "was a major participant in the underlying felony" and (2) "acted with reckless indifference to human life," we separately evaluate the continued viability of each element through the *Banks* and *Clark* prism.

### A. *Major participant*

Under *Banks* and *Clark*, a "major participant" in a robbery is someone whose "personal involvement" is "substantial"; such a participant "need not be the ringleader," but her involvement must be "greater than the actions of an ordinary aider and

abettor." (*Banks*, *supra*, 61 Cal.4th at pp. 801-802; *People v. Williams* (2015) 61 Cal.4th 1244, 1281.) Courts are to examine the totality of the circumstances when evaluating the extent of participation, including several factors our Supreme Court identified in *Banks* as relevant but not dispositive on the issue: (1) the defendant/aider and abettor's role in planning the robbery; (2) her role in supplying or using lethal weapons; (3) her awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) her presence at the scene of the killing and thus whether she was "in a position to facilitate or prevent the actual murder"; and (5) her actions after the use of lethal force. (*Banks*, at p. 803; *Clark*, at p. 611.)

Substantial evidence supports the finding that defendant was a major participant, even when applying the heightened standard set forth in *Banks* and *Clark*. Although the facts do not disclose defendant's role in planning the carjacking, robberies, attempted robberies, or murder, and although she did not supply or use any firearm during the three incidents underlying this case, she did drive to various locations so that her compatriots could pick up firearms and, in the Rosemead attempted carjacking, she used her SUV—which itself can be a lethal weapon—to block the intended victim's attempts to drive away when defendant's boyfriend and his friend had their shotguns aimed at him. Defendant was present at the scene of the killing. Defendant was also aware of the particular dangers posed by her compatriots: The incident that resulted in the murder, robbery and attempted robberies was the last incident of the night; by that time, defendant had watched as her boyfriend and his friends had openly brandished firearms to threaten the

10

carjacking victim and attempted carjacking victim, and had opened fire on the attempted carjacking victim.  Yet she willingly drove them to the third and final incident and, after that incident, did nothing to help the murder victim.

Defendant offers two arguments against this conclusion. First, she argues that she never got out of the car, such that she was the quintessential "getaway driver" who is far removed from the culpability of the actual perpetrators.  We disagree.  Although she never got out of her car, she played an integral role in all of the predicate crimes:  Without her wheels, the crimes could not have happened.  More to the point, she drove her boyfriend and his friends to get their guns, drove them from one location to another to commit crimes, and she even drove her SUV in a manner that facilitated those crimes—she tried to block the attempted carjacking victim from escaping and drove alongside the pedestrians that her boyfriend and his friend threatened *while hanging out of her SUV*.  Second, defendant argues that she testified that she was afraid of her boyfriend on the night she participated in the crime spree and did not know he would be using guns.  This argument ignores the standard of review, which requires us to defer to the jury's evaluation of her credibility.  By convicting her, the jury necessarily found defendant was not credible, and we may not gainsay that credibility finding under substantial evidence review.  (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

### B.  *Reckless indifference to human life*

A defendant acts with reckless indifference to human life when she ""knowingly engag[es] in criminal activities known to carry a grave risk of death.""" (*Banks, supra*, 61 Cal.4th at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577,

11

quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157-158.) This standard "has a subjective and an objective" component. (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Scoggins*, at p. 677, quoting *Banks*, at p. 801.) The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.) To satisfy the objective component, the risk of death "'"must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him[], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation."'" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life. "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks, supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins, supra*, 9 Cal.5th at p. 677). The considerations are: (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that she had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the

perpetrators of the [underlying] felony and the victims?";
(4) "What was the defendant's knowledge of . . . her confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?" (*Id.*, citing *Clark*, *supra*, 63 Cal.4th at pp. 618-623.)

Substantial evidence supports the finding that defendant acted with reckless indifference to human life, even when applying the heightened standard set forth in *Banks* and *Clark*. Although defendant's awareness that her boyfriend and his friends would be "armed" or that a gun would be used is not enough, "without more," to establish an awareness of a grave risk of death (*Banks*, *supra*, 61 Cal.4th at p. 809, fn. 8), here there was more: Defendant not only knew that guns would be used, but she drove her compatriots to various locations so that they could get those guns, and she knew of her compatriot's propensity for violence and their likelihood to use lethal force as the crime spree wore on: Even if defendant had been surprised by the *brandishing* of guns at the initial carjacking, or had been surprised by the *firing* of the guns at the later attempted carjacking, she was certainly aware of the likelihood that her compatriots would brandish and fire their weapons by the time of the third incident that resulted in a killing. Yet defendant not only continued to drive them to the third incident but also drove her SUV in a manner that allowed them to hang out of its windows and threaten the third set of victims. As noted above, defendant was physically present the whole time over what took several hours, and thus had ample time to restrain her compatriots. And as noted above, she made no efforts to minimize the risk of violence during any of the incidents.

13

Defendant's response to this second element of the special circumstance is the same as her response to the first element, and lacks merit for the same reasons.

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ