Filed 7/29/21  P. v. Bloxton CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | B307556 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA018339) |
| v. | |
| DANTE LAVELL BLOXTON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriguez, Acting Attorney General, Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt Bloomfield and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Dante Lavell Bloxton (defendant) appeals the trial court's denial of his petition for relief under Penal Code section 1170.95.[1] We conclude there was no error and affirm the order.

## FACTS AND PROCEDURAL BACKGROUND

I.      Facts[2]

A.      *The underlying crime*

On a Sunday night in August 1998, defendant, Efren Bullard (Bullard) and others approached two men who were using a gas station pay phone in Long Beach, California. Defendant and Bullard had firearms. With guns drawn, defendant and his companions demanded that the men hand over their valuables. Defendant and his group soon realized that the two men had driven separate cars—namely, a Bronco and a Camaro. From the Bronco, the group pulled out one man's wife by her hair and demanded her jewelry and money; they then proceeded to ransack the Bronco. After a third man got out of the Camaro, defendant and his group lined up all four victims by the Bronco and demanded that they turn out their pockets. One

---

1      All further statutory references are to the Penal Code unless otherwise indicated.

2      We draw these facts from our prior, unpublished appellate opinion affirming defendant's conviction. (*People v. Bloxton* (July 23, 1998, B113892).)

2

member of the group commented that he was "going to kill all of the victims because they were Mexican."  When the robbers went to ransack the Camaro, they discovered David Hoppes (Hoppes) inside the car.  Defendant and Bullard pulled Hoppes from the Camaro and started to beat him and to go through his pockets.  When Bullard announced that he was going to kill Hoppes because he "was White," defendant responded, "I don't care."  Moments later, Bullard shot Hoppes in the leg and, after Hoppes collapsed and started to crawl away, defendant and Bullard walked up to him in tandem.  While defendant and Bullard stood over Hoppes, Bullard shot him repeatedly.  The multiple gunshot wounds were fatal.  The robbers then ran off.

**B.** ***Prosecution, conviction and appeal***

The People charged defendant with (1) the murder of Hoppes (§ 187, subd. (a)), and (2) five counts of second degree robbery (§ 211).  As to the murder, the People alleged a special circumstance—namely, that it was committed in the course of a robbery (§ 190.2, subd. (a)(17)(A)), which could be found true only if defendant was a major participant in the robbery and acted with reckless indifference to human life. (*Id.*, subd. (d).)  The People further alleged that defendant and Bullard "personally use[d] a firearm" (§ 12022.5, subd. (a)), and that a principal was "armed with a firearm" (§ 12022, subd. (a)(1)).

A jury convicted defendant of murder and four counts of second degree robbery, and found true all of the allegations.

The trial court sentenced defendant to prison for life without the possibility of parole (LWOP) plus 15 years.  Specifically, the court sentenced defendant to LWOP plus five years (for the firearm enhancement) on the murder count, and a consecutive 10 years for one of the second degree robbery counts

3

(comprised of base sentence of five years plus five years for the firearm enhancement). The court stayed or concurrently ran the remaining sentences.

Defendant appealed his conviction and we affirmed in an unpublished opinion.

## II.     Procedural Background

On December 24, 2018, defendant filed a petition seeking resentencing for the murder conviction under section 1170.95.[3] The court appointed counsel for defendant, and ordered the parties to submit further briefing. Following a hearing, the trial court "summarily denied" defendant's petition. The court found that defendant had not "establish[ed] a prima facie case for relief" under section 1170.95 because one of the elements of that prima facie case—namely, that defendant could not be convicted of first degree murder under the amended murder statute—was foreclosed by "the jury['s finding] beyond a reasonable doubt [that defendant] was a major participant in the underlying felony [who] acted with reckless indifference to human life."

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in denying his section 1170.95 petition (and thereby violated due process) because the jury's prior special circumstance finding does not

---

[3]     The petition for section 1170.95 relief was included within a petition for a writ of habeas corpus that sought to vacate his murder conviction under *People v. Chiu* (2014) 59 Cal.4th 155. Defendant filed a second petition for a writ of habeas corpus on January 28, 2020, seeking a hearing to preserve evidence for a future juvenile offender parole hearing under *People v. Franklin* (2016) 63 Cal.4th 261. Neither petition is before us in this appeal.

4

preclude him from making his prima facie case under section 1170.95. Because this argument turns on questions of statutory construction and the application of law to undisputed facts, our review is de novo. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)

## I. Effect of Jury's Special Circumstance Finding

Section 1170.95 authorizes a defendant "convicted of felony murder or murder under a natural and probable consequences theory" to vacate his murder conviction if, as a threshold matter, he makes a "prima facie showing" of entitlement to relief. (§ 1170.95, subds. (a) & (c).) This, in turn, requires a showing that, among other things, he "could not be convicted of first or second degree murder" under the amendments to the murder statutes that became effective on January 1, 2019. (*Id.*, subd. (a)(3).) These statutes, even as amended, still authorize a murder conviction based on a theory of vicarious liability if the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e)(3).)

Applying these statutes, the trial court properly concluded that defendant had not made a prima facie showing of his entitlement to relief under section 1170.95. That is because the jury in his case, by virtue of finding the special circumstance allegation to be true, necessarily found that defendant was a major participant in the underlying felony and acted with reckless indifference to human life. As we held in *People v. Nunez* (2020) 57 Cal.App.5th 78, 93-97 (*Nunez*), review granted January 13, 2021, S265918, this prior finding renders defendant not eligible for relief under section 1170.95 as a matter of law.

5

(Accord, *People v. Simmons* (2021) 65 Cal.App.5th 739, 746-750; *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Gomez* (2020) 52 Cal.App.5th 1, 14-17, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141-1143, review granted Oct. 14, 2020, S264284; but see *People v. Arias* (July 22, 2021) __Cal.App.5th__ [2021 Cal.App.Lexis 597], *25-*26; *People v. Pineda* (July 19, 2021) __Cal.App.5th__ [2021 Cal.App.Lexis 586], *1-*2; *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 425; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179-1180, review granted June 24, 2020, S262011; *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258-263, review granted Nov. 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 956-958, review granted Apr. 28, 2021, S267802; *People v. Secrease* (2021) 63 Cal.App.5th 231, 236, 247 (*Secrease*).)

Defendant responds that *Nunez* is wrongly decided because, as the cases disagreeing with *Nunez* have explained, the jury's prior special circumstance (1) has been rendered meaningless by two Supreme Court decisions—*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*)—that came out after the jury's verdict in this case, and which altered the manner in which appellate courts are to review this particular special circumstance for substantial evidence, and (2) "relates [in any event] only to *punishment*" and thus cannot "stand in the way of eligibility" vis-à-vis defendant's underlying *conviction*. Neither argument undermines *Nunez,* which rests on the rationale that the jury's prior special circumstance finding remains valid—and thus remains a basis

6

for summarily denying relief under section 1170.95—unless and until the defendant successfully overturns that finding in a habeas petition.  (*Nunez, supra*, 57 Cal.App.5th at pp. 93-97.)  Because defendant has not yet done so, the jury's prior special circumstance finding precludes relief under section 1170.95 as a matter of law.

## II.    Continued Validity of the Jury's Special Verdict Finding

Even if we were to hedge our bets and not follow *Nunez* in light of the deep split of authority on the question pending before our Supreme Court, our task would be to undertake for ourselves the task that *Nunez* entrusts to a trial court considering a subsequent habeas corpus petition—that is, evaluating whether the jury's special circumstance finding is supported by substantial evidence through the prism of *Banks* and *Clark*.  (*Secrease, supra*, 63 Cal.App.5th at p. 255 [so holding].)  Defendant disagrees, arguing that the very need for *Banks* and *Clark* review renders the prior special circumstance finding a nullity—and outside the scope of the law of the case and collateral estoppel doctrines—because the issue decided by the jury (which did not account for *Banks* and *Clark*) is not the same as the issue before us now (which does account for *Banks* and *Clark*).  We are not persuaded, because a ruling by this court that the special circumstance finding is valid under *Banks* and *Clark* validates the prior special circumstance finding.  Thus, we turn to evaluating whether substantial evidence supports the prior special circumstance finding.  That evaluation leads to the conclusion that the jury's finding must stand, and that relief under section 1170.95 is accordingly unavailable to defendant as a matter of law.  Because the finding that renders defendant

7

ineligible for relief—like the special circumstance itself—requires proof beyond a reasonable doubt that defendant (1) "was a major participant in the underlying felony" and (2) "acted with reckless indifference to human life," we separately evaluate the continued viability of each element through the *Banks* and *Clark* prism.

A. *Major participant*

Under *Banks* and *Clark*, a "major participant" in a robbery is someone whose "personal involvement" is "substantial"; such a participant "need not be the ringleader," but his involvement must be "greater than the actions of an ordinary aider and abettor." (*Banks*, *supra*, 61 Cal.4th at pp. 801-802; *People v. Williams* (2015) 61 Cal.4th 1244, 1281.) Courts are to examine the totality of the circumstances when evaluating the extent of participation, including several factors our Supreme Court identified in *Banks* as relevant but not dispositive on the issue: (1) the defendant/aider and abettor's role in planning the robbery; (2) his role in supplying or using lethal weapons; (3) his awareness of the "particular dangers posed by the nature of the crime, the weapons used, or past experience or conduct of the other participants"; (4) his presence at the scene of the killing and thus whether he was "in a position to facilitate or prevent the actual murder"; and (5) his actions after the use of lethal force. (*Banks*, at p. 803; *Clark*, at p. 611.)

Substantial evidence supports the finding that defendant was a major participant even when applying the heightened standard set forth in *Banks* and *Clark*. Although the facts do not disclose defendant's role in planning the robbery or in supplying the two guns used during the robbery, the jury found that he was one of only two members of a larger group who was "armed with" and "personally used" a firearm, and he used that firearm to

8

order the victims to hand over their valuables.  Although the evidence does not disclose whether defendant had witnessed his cohorts engaging in violence on prior occasions, defendant did see them—on this occasion—toting guns, pulling one victim out of the car by her hair and beating up another.  Defendant was also present at the scene the whole time, including when his cohorts threatened to kill four of the robbery victims because they "were Mexican" and Hoppes because he "was White," and thus was "in a position to facilitate or prevent the actual murder."  Indeed, defendant responded to Bullard's announcement of his intent to kill Hoppes—not by saying, "Don't"—but instead by saying, "I don't care."  And after Bullard shot Hoppes once in the leg, defendant did not take any action or say anything to discourage Bullard from making good on his threat to kill the "White" guy; instead, he walked with Bullard up to Hoppes so that Bullard could shoot Hoppes to death.  In sum, defendant played an integral role in the robbery of the four victims, one that was more extensive than most of the other robbers.

### B. *Reckless indifference to human life*

A defendant acts with reckless indifference to human life when he ""knowingly engag[es] in criminal activities known to carry a grave risk of death.""" (*Banks*, *supra*, 61 Cal.4th at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157.)  This standard "has a subjective and an objective" component.  (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)  To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Scoggins*, at

9

p. 677, quoting *Banks*, at p. 801.)  The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.)  To satisfy the objective component, the risk of death ""must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him[], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation.""" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life.  "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks*, *supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins*, *supra*, 9 Cal.5th at p. 677).  The considerations are:  (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?"  (*Id.*, citing *Clark*, *supra*, 63 Cal.4th at pp. 618-623.)

10

Substantial evidence supports the finding that defendant acted with reckless indifference to human life even when applying the heightened standard set forth in *Banks* and *Clark*. Although defendant's awareness that Bullard was "armed" or that a gun would be used is not enough, "without more," to establish an awareness of a grave risk of death (*Banks*, *supra*, 61 Cal.4th at p. 809, fn. 8), here there was much more: Defendant not only knew that guns would be used, but he and Bullard each had their own gun, at least one of those guns was loaded, and defendant and Bullard induced the victims to part with their valuables by displaying those guns. As noted above, defendant was physically present the entire time, and thus had ample time to restrain Bullard from shooting Hoppes or to aid Hoppes. Defendant did none of those things. Indeed, when Bullard announced his intention to kill Hoppes merely because of his race, defendant's response was the epitome of reckless indifference—he said, "I don't care." The interaction between defendant's group and the victims lasted several minutes, as the robbers shook down the two men at the pay phone, dragged the woman out of the Bronco, corralled all of the victims, and then found, beat and shot Hoppes. Although, as noted above, there was no evidence that defendant was aware of Bullard's or his other cohort's propensity for violence based on prior incidents, defendant certainly witnessed it over the course of the robbery in this case. And defendant made absolutely no effort to minimize the risk of violence during the robbery.

11

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST

12