Filed 12/21/21  P. v. Lowe CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARQUIS MELVIN LOWE,<br><br>    Defendant and Appellant. | B310638<br><br>(Los Angeles County<br>Super. Ct. No. NA027826) |

APPEAL from an order of the Superior Court of Los Angeles County.  Laura L. Laesecke, Judge.  Reversed and remanded with directions.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1997, defendant and appellant Marquis Melvin Lowe was convicted by a jury of first degree murder (Pen. Code, § 187),[1] second degree burglary (§ 459), and three counts of second degree robbery (§ 211). Allegations that a principal was armed with a firearm were found true. (§ 12022, subd. (a)(1).) He was sentenced to 26 years to life in state prison.

In 2019, defendant filed a petition for resentencing pursuant to section 1170.95. After appointing counsel to represent defendant and considering briefing and argument by both parties, the trial court denied defendant's petition without issuing an order to show cause and holding an evidentiary hearing pursuant to section 1170.95, subdivision (d).

Defendant timely filed a notice of appeal. He argues that because he established a prima facie case that he is potentially eligible for resentencing relief, the trial court should have issued an order to show cause and held an evidentiary hearing. The People agree.

In accordance with the parties' briefs, we reverse and remand the matter for the trial court to issue an order to show cause and to hold an evidentiary hearing pursuant to section 1170.95, subdivision (d).

## FACTUAL BACKGROUND

"The evidence established that on the evening of September 30, 1995, three boys entered the 25th Plaza Market in Long Beach and took some drinks from the cooler. Instead of paying for the items at the counter, one of the boys demanded money at gunpoint from Omar Shalaby, the owner. The other

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

two grabbed Adam Osman, a market employee.  Shalaby opened the cash register.  The gunman took money from the register and the three robbers ran out.  Osman was unable to identify any of the defendants from corporeal lineups. However, [Pride] Eldridge's [Eldridge] and [defendant's] fingerprints were lifted from the countertop." (*People v. Eldridge* (Jan. 12, 1999, B113801) [nonpub. opn.], at pp. 2–3.)

"On October 6, 1995, as Steven Sea was seated at a desk at his Long Beach travel agency, three young men entered the business.  Sea's wife, Sophana, their three young daughters, aged 3, 4, and 5, and Yat Meuk, their daughters' babysitter, were also inside the business.  One of the youths pushed Meuk, who was seated near the door, to the floor, struck her with a gun when she tried to look at his face, and took $400 from her pocket.  The other two demanded money from Steven Sea, who told them he had no money, or no more money.  Sophana Sea, who was inside the bathroom at the time, heard voices repeating, 'Give me your money, man.'  Her husband yelled to her in Cambodian to remain inside the bathroom.  She then heard two gunshots.  She ran out of the bathroom and found her husband on the floor, with the children standing near him.  The robbers had fled.  Steven Sea died as a result of two bullet wounds to the forehead, inflicted at point-blank range.  The gold and diamond bracelet Sophana Sea had given her husband as a gift was missing from his wrist." (*People v. Eldridge*, *supra*, B113801, at p. 2.)

One of the assailants in the second crime was identified as Eldridge.  (*People v. Eldridge*, *supra*, B113801, at pp. 3–4.)  At some point thereafter, defendant was arrested and told a detective about his involvement in the crimes.  (*People v. Eldridge*, *supra*, B113801, at pp. 4–5.)

Defendant was charged with murder, burglary, and three counts of robbery, and the matter proceeded to a jury trial. Among other things, the jury was instructed on first degree felony murder.[2]

The jury convicted defendant of first degree murder. The verdict form provides, in relevant part, that the jury found defendant guilty of murder and that the murder was committed while defendant was engaged in the commission of robbery and burglary. Defendant appealed, and on January 12, 1999, we affirmed the judgment as modified. (*People v. Eldridge*, *supra*, B113801, at p. 18.)

## PROCEDURAL BACKGROUND

On January 2, 2019, defendant filed a petition to be resentenced pursuant to section 1170.95. He averred that because he had been convicted of murder under either a felony murder theory or the natural and probable consequences doctrine, he was entitled to resentencing relief. The trial court appointed counsel and matter was briefed.

On December 16, 2020, the trial court entertained oral argument on defendant's petition. At the onset of the hearing, it set forth a brief summary of the facts: "[M]y understanding is that [defendant] was involved in an armed robbery about a little less than two weeks before where the murder and the robbery occur. He is with two partners. I actually honestly don't know if they're the same two partners, but it's a three-person robbery

---

[2]     According to defendant's response to the People's opposition to his section 1170.95 petition, the jury was presented with two theories of guilt: direct aiding and abetting and the natural and probable consequences doctrine.

4

that is armed, and they go in at gunpoint and . . . rob two employees there.  They take money from the register.  They run out together.

"So, again, it's sort of an aiding and abetting scenario.  And [defendant's] fingerprints were found on the countertop inside of the store.  So there is confirmation that during that robbery he was not standing outside.  He was not the lookout.  He was not the getaway driver.

"He is inside, and it's an armed robbery; so he would know that the coparticipants have a gun or more than one gun.  I'm not clear on that.  And then, as I mentioned, a little less than two weeks later, the . . . murder/robbery at the travel agency occurs.

"The defendant admits . . . that he was trying to decide on a place to commit a robbery, that he had purchased a black stocking earlier that day.  He goes into the travel agency.  He is the one that approaches the victim—who ultimately ends up being the deceased—demanding money.  He's the one who looks through a desk for more money.  He's the one who demands jewelry from what ends up to be the decedent.

"He says that the decedent took a swing at him.  The thing that he doesn't say is that he pulled the trigger.  I realize there are transcripts attached to [defendant's] motion about the triggerman.  Those are not from the trial.  It's not the appellate record.  It's not something that has been subject to cross-examination by the D.A."

At that point, defense counsel interjected that the transcripts, which were from Eldridge's parole hearings, were "allowed to come in.  Additional information is allowed under 1170.95."

After some discussion with defense counsel, including the trial court's acceptance that Eldridge, not defendant, was the shooter, the trial court continued its recitation of the facts: Defendant "was inside of the travel agency. He left the location with money from the robbery. He originally told the police that he was outside when the shots were fired, and then he amended that and said he was inside when the shots were fired.

"I'm not saying that he was the shooter. But I am saying that based on what I am reading here, he was a major participant in this robbery. That he was aware that somebody in his group had a gun. And that he traveled with them to the location, according to the witness who saw an individual. . . .

"After the gunshots were fired, that same witness saw three people running away from the travel agency quickly and across the street to an alley. And the police officers found three dark-colored nylon stockings in that alley and [defendant] admitted [that one] had been his." The trial court conclude that this "behavior qualifies as a major participant, that he acted with reckless disregard to human life because he was aware of an armed robbery just the week before. That he was a major participant in this particular robbery."

Ultimately, the trial court determined: "We're looking at under these facts would the person qualify as a major participant under [*People v. Banks* (2015) 61 Cal.4th 788 (*Banks*)] and [*People v. Clark* (2016) 63 Cal.4th 522, 611 (*Clark*)]. What I am looking at is—I think what the question is under today's law, under *Banks* and *Clark*, could this defendant still be convicted of first-degree murder, and to me the answer is 'yes' based on what we have already put here on the record."

Defendant's timely appeal ensued.

## DISCUSSION

I.  *Standard of Review*

We review the trial court's order de novo.  (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [application of law to undisputed facts]; *A.S. v. Miller* (2019) 34 Cal.App.5th 284, 290 [statutory interpretation].)

II.  *Relevant Law*

Section 1170.95 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court."  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973 (*Drayton*).)

In order to obtain resentencing relief, the petitioner must file a facially sufficient section 1170.95 petition.  (§ 1170.95, subds. (a)(1)-(3), (b)(1)(A).)  If a petitioner does so, then the trial court proceeds to section 1170.95, subdivision (c), to assess whether the petitioner has made a prima facia showing for relief, thereby meriting an evidentiary hearing.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  When making this determination, "the trial court should assume all facts stated in the section 1170.95 petition are true.  [Citation.]  The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law . . . .  [I]f the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.'  [Citation.]  However, this authority to make determinations without conducting an evidentiary hearing . . . is limited to readily ascertainable facts from the record (such as the crime of

7

conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, at p. 980; see also *Lewis*, *supra*, 11 Cal.5th at pp. 970–971.)  In other words, a defendant is ineligible for relief only where the record conclusively shows that the jury actually relied—and the defendant's murder conviction actually rests—upon a theory of liability that is unaffected by section 1170.95.

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause.  (§ 1170.95, subd. (c).)  "[U]nless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record[,]" the trial court then holds a hearing at which "the burden of proof . . . shift[s] to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Drayton*, *supra*, 47 Cal.App.5th at p. 981; see also § 1170.95, subd. (d)(1)-(3).)

III.  *Defendant is entitled to an order to show cause evidentiary hearing*

As the parties agree, defendant made a prima facie showing of eligibility.  After all, he filed a section 1170.95 petition averring that (1) an information had been filed against him allowing the prosecution to proceed under a theory of murder under the felony murder rule or the natural and probable consequences doctrine; (2) he was convicted of first degree murder; and (3) he could not now be convicted of murder following the amendments to sections 188 and 189.  And, nothing in the record demonstrates that as a matter of law defendant is not eligible for relief.  In fact, the jury was instructed on felony

murder and seemingly convicted defendant of felony murder. Thus, it is not evident as a matter of law that defendant could be convicted of murder under the recently amended statutes.

The trial court denied defendant's petition on the grounds that defendant was a major participant in the crimes. But to have made that determination, the trial court had to have engaged in some sort of "factfinding involving the weighing of evidence or the exercise of discretion." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) That is not permitted at the prima facie stage of the proceedings. (*Ibid.*) Under these circumstances, an evidentiary hearing—where the People bear the burden of proof beyond a reasonable doubt—is required.[3]

Because defendant satisfied the prima facie stage of section 1170.95, subdivision (c), the trial court was required to set the matter for an order to show cause, with an evidentiary hearing. In so holding, "[w]e express no opinion about [defendant's] ultimate entitlement to relief following the hearing. (§ 1170.95, subd. (d)(2).)" (*Drayton*, *supra*, 47 Cal.App.5th at p. 983.)

---

[3] As the People point out in their respondent's brief, while "the record at present overwhelmingly supports" the fact that defendant is not entitled to be resentenced, that finding cannot be made until after an evidentiary hearing.

**DISPOSITION**

The order denying defendant's section 1170.95 petition is reversed.  On remand, the trial court is directed to issue an order to show cause (§ 1170.95, subd. (c)) and to hold an evidentiary hearing to determine whether to vacate defendant's murder conviction and resentence him (§ 1170.95, subd. (d)).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ