Filed 1/25/22  P. v. Amador CA2/2
Opinion following transfer from Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B305288 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA234510) |
| v. | |
| CARLOS M. AMADOR, | **OPINION ON REMAND** |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Kathleen Kennedy, Judge.  Reversed and remanded with directions.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General and Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.

_____

Pursuant to order by the California Supreme Court, we vacate our original opinion and issue this opinion instead.

In 2003, defendant and appellant Carlos M. Amador pleaded guilty to four counts of second degree murder (Pen. Code, § 187)[1] and was sentenced to four concurrent terms of 15 years to life in state prison.

On April 22, 2019, defendant filed a petition for resentencing pursuant to section 1170.95. Following a hearing, the trial court denied the petition, finding that defendant had not stated a prima facie case for relief.

Defendant timely filed a notice of appeal. He argued that because he established a prima facie case that he is potentially eligible for resentencing relief, the trial court should have issued an order to show cause and held an evidentiary hearing. On January 29, 2021, we affirmed the trial court's order, finding that defendant was a major participant in the crimes and acted with reckless indifference to human life. (*People v. Amador* (Jan. 29, 2021, B305288) [nonpub. opn.].) Defendant filed a petition for review with the California Supreme Court, and on November 17, 2021, the Supreme Court granted his petition, and "transferred [the case back] to the Court of Appeal, Second Appellate District, Division Two, with directions to vacate its decision and to reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952, 971–972."

On December 1, 2021, the People filed a supplemental letter brief, conceding that "[a]lthough the evidence does not appear to support [defendant's contention] that he could not be

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

convicted of murder under amended section 189, subdivision (e)[,] it is not evidence that this claim fails *as a matter of law*." Thus, according to the People, "the trial court should have issued an order to show cause and held a hearing in order to weigh the evidence."

We reverse the trial court's order denying defendant's petition for resentencing and remand the matter for the trial court to issue an order to show cause and hold an evidentiary hearing pursuant to section 1170.95, subdivision (d).

## FACTUAL BACKGROUND[2]

Just after 11:00 p.m. on May 4, 2002, Harish "Harry" Kumar[3] (Kumar) came home and discovered his home engulfed in flames. Police officers and firefighters responded to the home. Four members of Kumar's family (his mother (Sitaben Patel (Patel)), his wife (Gita Kumar (Gita)), and his two children (Paras Kumar (Paras) and Tulsi Kumar (Tulsi))[4] were found burned to death in a bedroom near the entry of the home. Each victim was bound in some fashion and had duct tape over his or her mouth

---

[2] Because defendant pleaded guilty prior to trial, parts of this factual background are taken from the transcript of his preliminary hearing, a copy of which was attached to the opposition to defendant's resentencing petition. Other facts are drawn from defendant's testimony at codefendant Virenda "Victor" Govin's (Victor) trial.

[3] Harry Kumar was also known as Harry Patel.

[4] Because some of the victims and two of the perpetrators share the same last names, for ease we refer to them by their first names.

and/or eyes. Fire investigators determined there were three separate incendiary fires in the residence.

Kumar's family owned the Universal City Inn in Studio City. Gita was in charge of the business. Victor owned a hotel, the Studio Place Inn, located directly adjacent to the Universal City Inn. Victor had asked Kumar to sign papers giving him rights to an easement in the alley. Kumar told Victor it would be Gita's decision. The Kumars and Victor both had expansion projects that required use of the alley.

After seeing news coverage of the murders, Angelberto Novoa (Novoa) contacted detectives and told them that six weeks prior to the fire, individuals known to him as "Pedro" and "Freddie" (later identified as defendant and Victor, respectively) solicited him and a friend to go to the same house that was burned to intimidate the people who lived there into signing papers. Novoa said that he and Antonio Renteria met with defendant, but ultimately declined to work with them.

Detectives interviewed Milton Salas (Salas), who described a conversation he had with defendant. Defendant told Salas that he had gone with two of his Indian friends (who owned hotels) to a house to get documents signed, that "'things got out of hand,'" someone's face had been seen, and one of them ordered that everyone in the house be killed and the house burned. Defendant said he took watches and/or jewelry from the house.

Detectives interviewed Droshawn Goodin, who told them that defendant had asked him to be an alibi witness for the night of the murders.

Video surveillance footage showed defendant's truck driving toward the victims' residence around 9:00 p.m. on the

4

date of the murders, and driving away from the residence shortly after 11:00 p.m.

Defendant was arrested and interviewed by the police. According to his preliminary hearing testimony, defendant admitted his involvement in the crimes and identified Victor and Pravin "Peter" Govin (Peter) as his coperpetrators. Defendant said that on the night of the offense, he met Victor and Peter at a restaurant around 6:00 p.m. They then drove together to the victims' house in defendant's truck. Once there, Victor went up to the door first. Peter and defendant, each armed with a gun, went to the door some time later. Peter ordered the occupants of the home, including Victor, to lay on the floor, as a home invasion robbery being staged. Peter told defendant to go to one of the bedrooms where the children would have been. Defendant went into the bedroom of 18-year-old Paras. Victor subsequently joined them and tied up Paras.

Defendant said that he and Victor also went to 16-year-old Tulsi's bedroom and tied her up as well. Both children were then moved to another bedroom. Defendant said that he, Peter, and Victor looked around the house for money.

Defendant stated that Patel and Gita were at one point restrained in the living room; Peter repeatedly kicked and shouted at Gita. Paras broke free from the bedroom and pleaded with the men to stop attacking his mother. Peter and Victor then assaulted Paras and restrained him again in the bedroom. Defendant said that he told Peter and Victor that he had not "signed on for this" and "wanted no part of it," so he went outside to his truck.

Within five minutes, Peter and Victor joined him.

Defendant offered a slightly different account of the events when he testified at codefendant Victor's trial. According to the summary of that testimony, which was attached to the People's opposition to defendant's resentencing petition, defendant testified that he participated in the armed robbery at the Kumar residence and helped bind the victims. Defendant also testified that at Victor's direction, he poured flammable liquid in the master bedroom. At one point, defendant went to the bedroom where the victims were tied up. When defendant questioned Victor's actions and asked why he was "'killing them,'" Victor replied, "'Because she saw me.'" Defendant told Victor, "'Okay. If she saw you, why don't you just kill her?'" Victor said that they were all going to die. Defendant maintained that he left at that point.

## PROCEDURAL BACKGROUND

I. *Defendant's section 1170.95 petition*

On April 22, 2019, defendant, through counsel, filed a petition to be resentenced pursuant to section 1170.95. He averred that an information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; he was convicted of second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and he could not now be convicted of murder because of changes made to sections 188 and 189, effective January 1, 2019.

The People opposed the petition, arguing, inter alia, that defendant was not entitled to relief because there was "more than sufficient evidence in the record of conviction to sustain a first degree murder conviction on a felony murder theory and a felony murder special circumstance." And, there was more than

6

sufficient evidence that defendant acted with a conscious disregard for human life, the mental state required for his second degree murder convictions.

Defendant filed a reply brief, arguing that he did set forth a prima facie case for relief. Thus, he requested that the trial court set a hearing to determine whether to vacate his murder conviction and resentence him.

II. *Trial court's order denying defendant's petition*

On January 17, 2020, the trial court entertained oral argument and then denied defendant's petition. After summarizing the facts of the crimes (based on evidence from a codefendant's trial at which defendant testified), the trial court concluded that defendant was a major participant who acted with conscious disregard for life. The trial court explained: "[T]he idea that he is not a major participant acting with reckless disregard is comical because it's just not true. [¶] And I think, as the prosecutor said, he could have been convicted as an aider and abettor. He could have, himself, gotten the death penalty on a first degree murder conviction. And there's clearly, clearly more than enough to support the second degree [murder] convictions. [¶] He should be counting his lucky stars every day that he is alive. He is alive and [still] breathing. And four people are dead, and largely because of his participation in those murders. [¶] This is one of the most horrible cases that I have ever had, and I wish that I could get it out of my mind. I wish I could not have heard the horror and seen the photographs and the suffering of these people that died. [¶] This case will be with me until I die. And [defendant] has some time to think about it. [¶] I mean, if he has been a model prisoner, and he is not really the criminal that you say, perhaps the Department of Corrections will release

7

him; I mean, he is eligible for parole by now I would imagine because this trial was in 2003.  So he has done, you know, 15 years.  I mean—although the day that he walks out of prison, if that day ever comes, watch out everybody.  Because this is one of the most dangerous people ever.  And he doesn't have a conscience at all, and I think I mentioned that before.  [¶] Because how can you participate in this and then, if this is so horrible that he says, you know, 'I didn't sign up for this,' and he leaves the house, why doesn't he do something to save these people?  [¶]  Nothing.  He does nothing.  He continues to assist these people in getting away, in stealing the things that they stole and everything.  [¶]  And there is no way that I find that the defense has made a prima facie case in this case, so the 1437 petition is denied."

## DISCUSSION

I.  *Standard of Review*

We review the trial court's order de novo.  (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [application of law to undisputed facts]; *A.S. v. Miller* (2019) 34 Cal.App.5th 284, 290 [statutory interpretation].)

II.  *Relevant Law*

Section 1170.95 provides a mechanism whereby people "who believe they were convicted of murder for an act that no longer qualifies as murder following the crime's redefinition in 2019[] may seek vacatur of their murder conviction and resentencing by filing a petition in the trial court." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 973 (*Drayton*).)  The statute applies to persons convicted after trial and to persons who entered a guilty plea. (§ 1170.95, subd. (a)(2); *People v. Sanchez* (2020) 48 Cal.App.5th 914, 919 ["Specifying that section 1170.95

8

applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply"].)

In order to obtain resentencing relief, the petitioner must file a facially sufficient section 1170.95 petition. (§ 1170.95, subds. (a)(1)-(3), (b)(1)(A).) If a petitioner does so, then the trial court proceeds to section 1170.95, subdivision (c), to assess whether the petitioner has made a prima facia showing for relief, thereby meriting an evidentiary hearing. (*People v. Lewis*, *supra*, 11 Cal.5th at p. 957.) When making this determination, "the trial court should assume all facts stated in the section 1170.95 petition are true. [Citation.] The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law . . . . [I]f the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a credibility determination adverse to the petitioner.' [Citation.] However, this authority to make determinations without conducting an evidentiary hearing . . . is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980; see also *People v. Lewis*, *supra*, at pp. 970–971.) In other words, a defendant is ineligible for relief only where the record conclusively shows that the jury actually relied—and the defendant's murder conviction actually rests—upon a theory of liability that is unaffected by section 1170.95.

If the trial court determines that the petitioner has made a prima facie showing of entitlement to relief, it must issue an order to show cause.  (§ 1170.95, subd. (c).)  "[U]nless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record[,]" the trial court then holds a hearing at which "the burden of proof . . . shift[s] to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Drayton, supra,* 47 Cal.App.5th at p. 981; see also § 1170.95, subd. (d)(1)-(3).)

III.  *Defendant is entitled to an order to show cause and evidentiary hearing*

The parties agree that defendant made a prima facie showing of eligibility.  After all, he filed a section 1170.95 petition averring that (1) an information had been filed against him allowing the prosecution to proceed under a theory of murder under the felony murder rule or the natural and probable consequences doctrine; (2) he was convicted of second degree murder; and (3) he could not now be convicted of murder following the amendments to sections 188 and 189.  And, the parties agree that after an examination of the record and briefing by both parties, there was no evidence to indisputably show that, as a matter of law, defendant was ineligible or not entitled to relief.

Because defendant satisfied the prima facie stages of section 1170.95, subdivision (c), the trial court was required to set the matter for an order to show cause, with an evidentiary hearing.

The trial court denied defendant's petition on the grounds that defendant was a major participant who acted with reckless disregard in the commission of the horrific murders. But to have made that determination, the trial court may have engaged in some sort of "factfinding involving the weighing of evidence or the exercise of discretion." (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.) That is not permitted at the prima facie stages of the proceedings. (*Ibid.*) Under these circumstances, an evidentiary hearing—where the People bear the burden of proof beyond a reasonable doubt—is required.[5]

In so holding, "[w]e express no opinion about [defendant's] ultimate entitlement to relief following the hearing. (§ 1170.95, subd. (d)(2).)" (*Drayton*, *supra*, 47 Cal.App.5th at p 983.)

---

[5] As the People point out in their respondent's brief, while "the record at present overwhelmingly supports" the fact that defendant is not entitled to be resentenced, that finding cannot be made until after an evidentiary hearing.

11

## DISPOSITION

The order denying defendant's section 1170.95 petition is reversed. On remand, the trial court is directed to issue an order to show cause (§ 1170.95, subd. (c)) and to hold an evidentiary hearing to determine whether to vacate defendant's murder conviction and resentence him (§ 1170.95, subd. (d)).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

12