Filed 11/18/22  P. v. Solano CA2/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B303993 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA042134) |
| v. | |
| GABRIELA MARTHA SOLANO, | **OPINION ON REMAND** |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Bruce F. Marrs, Judge.  Reversed and remanded.

Verna Wefald, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Michael C. Keller, and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Gabriela Martha Solano (defendant) appeals the trial court's denial of her petition for relief under Penal Code[1] section 1172.6 (former section 1170.95).[2]

We previously affirmed the court's order in an unpublished opinion, *People v. Solano* (June 10, 2021, B303993), concluding the record established that defendant was ineligible for resentencing as a matter of law based on the true finding on the special circumstance allegation by the jury at trial. Upon review, the California Supreme Court transferred this case back to us to reconsider in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). We now reverse the court's order and remand the matter for the court to conduct an evidentiary hearing under section 1172.6.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

For the sake of simplicity, we will refer to the section by its new numbering only.

# FACTS AND PROCEDURAL BACKGROUND

I.     **Facts**[3]

A.     ***The underlying crimes***

On a Tuesday night in late September 1998, defendant and four others—her boyfriend (Armando Perez), her roommate (Brenda Moreno), and two of her boyfriend's friends (Dennis Barroso and Brian Scott)—drove around the San Gabriel Valley committing a rash of violent crimes.

Defendant was the driver, and was behind the wheel of her own SUV.

Before starting the crime spree, defendant drove the others to a store to buy knitted black gloves and then made two further stops so that the others could pick up several shotguns and handguns.

The group started with a carjacking in Diamond Bar. Around 10:15 p.m., defendant followed a woman in an Infiniti until defendant's boyfriend and his two friends hopped out and, with shotguns and handguns on display, forced the Infiniti driver out of her car. They demanded her purse, her watch and her necklace, and drove off in her car.

Then the group attempted a second carjacking in Rosemead. Once again, defendant followed the intended victim into his driveway. When defendant's boyfriend and his friend Barroso jumped out of her SUV and pointed their shotguns at the driver of the other car, he honked his horn and put his car in reverse. Although defendant repositioned her SUV to block his

---

[3]     We draw these facts from our prior, unpublished appellate opinion affirming defendant's convictions. (*People v. Barroso* (Apr. 24, 2001, B135322).)

3

escape, he managed to drive away—but not before Barroso shot at the car (and missed).

The group capped off their spree with robbery and murder. Around 2:00 a.m., defendant drove up next to several pedestrians returning from a convenience store—namely, Gilbert Rivas (Rivas), Rivas's fiancée, Rivas's teenage brother and the fiancée's teenage son. Defendant's boyfriend and Barroso leaned out of the open windows of defendant's SUV with their shotguns on display and issued a gang challenge. The pedestrians said that they "don't bang," and defendant's boyfriend proclaimed his allegiance to the "Valinda Flats" gang. Defendant's boyfriend, both of his friends, and defendant's roommate then jumped out of the car with firearms at the ready. Rivas's brother handed over cash, some cigarettes and his new black Nikes. Defendant's roommate asked the fiancée to hand over her rings. When the fiancée balked, explaining that the rings had little monetary value but great sentimental value, defendant's roommate punched the fiancée in the face. Rivas told the roommate that she did not need to hurt his fiancée nor disrespect them. That is when Barroso shot Rivas in the stomach, and defendant's boyfriend shot him twice more in the back and head. Rivas died from the gunshot wounds.

### B. *Prosecution, conviction and appeal*

In the operative amended information, the People charged defendant with (1) the murder of Rivas (§ 187, subd. (a)), (2) the second degree robbery of Rivas's brother (§ 211), (3-5) the attempted robberies of Rivas, Rivas's fiancée, and the fiancée's son (§§ 211, 664), (6) the carjacking of the Infiniti driver (§ 215, subd. (a)), and (7) the second degree robbery of the Infiniti driver

4

(§ 211).  As to the murder, the People alleged the special circumstance that the "murder . . . was committed . . . while the . . . defendant[s] . . . were engaged in the commission of . . . robbery and attempted robbery" pursuant to section 190.2, subd. (a)(17).  As to the counts involving Rivas and his group, the People further alleged that a principal used and discharged a firearm resulting in great bodily injury or death (§§ 12022.5, subd. (a), 12022.53, subds. (d) & (e)(1)), and that the crimes were "committed for the benefit of, at the direction of, and in association with a criminal street gang" (§ 186.22, subd. (b)(1)).

The matter proceeded to a jury trial.  The jury was instructed that they could convict defendant of Rivas's murder as a direct aider and abettor or on a felony-murder theory.  With respect to the special circumstance allegation, the jury was instructed that the allegation could be found true only if the jury found, beyond a reasonable doubt, that (1) defendant was the "actual killer," (2) defendant "aided, abetted, or assisted . . . in the commission of the murder in the first degree" "with the intent to kill," or (3) defendant "aided, abetted, or assisted" the "commission or attempted commission of the crime of robbery" "as a major participant" and "with reckless indifference to human life."  In closing arguments, the prosecutor argued that defendant was liable for murder under the felony-murder theory, and that the special circumstance was true because she was a major participant in the robberies and attempted robberies who acted with reckless indifference to human life.

The jury found defendant guilty of all charges and found true the special circumstance, the firearm allegations, and the gang allegation.

5

The trial court imposed a prison sentence of life without the possibility of parole (LWOP) plus 42 years and 4 months. Specifically, the court imposed a sentence of LWOP for the special circumstance murder plus a consecutive 25 years to life for the firearm allegation. The court then imposed a consecutive sentence of four years and four months for the robbery of Rivas's brother; two consecutive sentences of four years for two of the attempted robbery counts; and a consecutive sentence of five years for the carjacking. The court either stayed the remaining sentences or ran them concurrently.

Defendant appealed, and we affirmed her convictions and sentence. In response to her argument that the trial court erred in admitting the evidence of the uncharged attempted carjacking and use of firearms in Rosemead, we reasoned that this evidence was relevant to establish that defendant and the others "harbored the intent to kill[] or acted with reckless indifference to human life" and to disprove defendant's proffered defense that she did not know the others intended or rob or kill and did not see them bring guns into her car.

In 2018, the Governor commuted defendant's sentence to 20 years to life.

## II. Procedural Background

On March 13, 2019, defendant filed a petition seeking resentencing under section 1172.6 for her murder conviction. The court issued an order summarily denying relief on the ground that section 1172.6 was unconstitutional because it impermissibly amended Proposition 7 and Proposition 115 as well as violated Marsy's Law and the separation of powers.

As noted above, we affirmed, but our Supreme Court vacated our prior opinion and has remanded the matter for us to reconsider in light of *Strong*.

**DISCUSSION**

Defendant argues that the trial court erred in denying her section 1172.6 petition on the ground that the jury's prior special circumstance finding rendered her ineligible for relief under section 1172.6. Because this argument turns on questions of statutory construction and the application of law to undisputed facts, our review is de novo. (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1123; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)

Section 1172.6 authorizes a defendant "convicted of felony murder or murder under the natural and probable consequences doctrine" to vacate her murder conviction if, as a threshold matter, she makes a "prima facie showing" of entitlement to relief. (§ 1172.6, subds. (a) & (c).) This, in turn, requires a showing that, among other things, she "could not presently be convicted of murder" under the amendments to the murder statutes that became effective on January 1, 2019. (*Id.*, subd. (a)(3).) These statutes, even as amended, still authorize a murder conviction based on murder committed by someone else in the course of a jointly committed felony as long as the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).)

In *Strong*, *supra*, 13 Cal.5th 698, our Supreme Court confronted the same basic facts present in this case. There, as here, the defendant's jury found true the special circumstance that he was a "major participant" who acted with "reckless indifference" to human life. There, as here, the jury's finding was made prior to the issuance of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*). There, as here, the defendant was seeking relief under section 1172.6 and the trial court had summarily denied him that relief on the ground that jury's pre-*Banks* and pre-*Clark* finding was binding. *Strong* held that this was wrong. *Strong* reasoned that *Banks* and *Clark* "substantially clarified"—and narrowed— the meaning of the terms "major participant" and "reckless indifference." (*Strong*, at p. 721.) As a result, *Strong* concluded, "[f]indings issued by a jury before *Banks* and *Clark*" are not preclusive and, more to the point "do not preclude a defendant from making out a prima facie case for relief." (*Id.* at pp. 710, 716-717.) *Strong* went on to hold that it was inappropriate for any court—trial or appellate—to evaluate whether substantial evidence supports the jury's pre-*Banks* and pre-*Clark* finding if the evidence is viewed through the narrowed *Banks* and *Clark* prisms. (*Id.* at pp. 719-720.) In sum, *Strong* held that a pre-*Banks* and pre-*Clark* special circumstance finding does not warrant summary denial of a section 1172.6 petition; instead, the matter must proceed to an evidentiary hearing. (*Id.* at p. 720.)

*Strong* disposes of this appeal. Defendant's special circumstance finding was made prior to *Banks* and *Clark*, and thus cannot provide the basis for the summary denial of her petition. She is entitled to an evidentiary hearing. Because we have concluded that she has not received such a hearing,

we remand for one.

## DISPOSITION

The court's order denying defendant's petition for resentencing is reversed, and the matter is remanded for the court to conduct an evidentiary hearing pursuant to section 1172.6.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ

9